889 F.2d 891w
 57 Ed. Law Rep. 54
 Raymond RAMON, a minor, By and Through his father and next
friend; Raymond RAMON, Sr.; Ruben Ventura, a minor, By and
Through his mother and next friend; Margaret Johnson, on
behalf of themselves and all others similarly situated,
Plaintiffs-Appellants,
v.
Pete SOTO, Area Director of Education, Phoenix Area Office,
Bureau of Indian Affairs, U.S. Dept. of the Interior; John
Derby, individually and in his official capacity, as
Principal of Phoenix Indian High School; Charles Smith,
individually and in his official capacity, as Asst.
Principal of Phoenix Indian High School; Delmar Nejo,
individually and in his official capacity; Gram Thomas,
Defendants-Appellees.
 No. 88-2690.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 6, 1989.
Decided Nov. 15, 1989.
 
 NOTE: THE COURT HAS WITHDRAWN THIS OPINION.
 889 F.2d 899
 58 USLW 2358
 FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Plaintiff-Appellee,
v.
John L. MOLINARO, Defendant-Appellant.
 No. 87-6662.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1989.
Decided Nov. 16, 1989.
 M. Jean Starcevich, Law Offices of Robert L. Mezzetti, San Jose, Cal., for defendant-appellant.
 J. Michael Echevarria and Richard Fruin, Lawler, Felix & Hall, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before SCHROEDER, BOOCHEVER and BEEZER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 John L. Molinaro (Molinaro) appeals the district court's grant of summary judgment in favor of the Federal Savings and Loan Insurance Corporation (FSLIC) for $6.4 million plus interest. FSLIC sued Molinaro and others claiming, inter alia, that Molinaro breached his fiduciary duty as a director of a federally insured savings and loan institution by diverting loan proceeds for his personal benefit. We agree that Molinaro breached his fiduciary duty to the institution, but limit the amount of his liability to the profit he made as a result of that breach. Accordingly, we reverse and remand to the district court for a determination of the amount of Molinaro's liability.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 On April 4, 1984, Molinaro and his equal partner, Donald P. Mangano, Sr. (Mangano), acquired Ramona Savings and Loan Association (Ramona), a state-chartered, federally insured savings and loan institution, for $3.9 million. One year later on May 15, 1985, Molinaro bought Mangano's interest for $5 million, becoming Ramona's sole shareholder, Chief Executive Officer, and Chairman of its Board of Directors.
 
 
 3
 In January 1986, Molinaro agreed to sell his entire interest in Ramona to Donald Stump (Stump) for $7.2 million. Stump needed to liquidate certain assets to complete the sale. Molinaro arranged for Ramona to extend a series of loans to the Copelands, a group of developers who were involved with Stump in several construction projects. The Copelands, in turn, used $6.4 million of the loan proceeds received from Ramona to buy out Stump's interest in the construction projects. Stump applied this money toward his intended purchase of Molinaro's stock. Pursuant to the written sale agreement between Molinaro and Stump, Stump transferred $5 million of the money he received from the Copelands to Molinaro and deposited $1.3 million in an escrow account to be used toward paying Molinaro the balance of the purchase price once Stump obtained the required regulatory approval to acquire Ramona. Stump paid the $2.2 million balance of the $7.2 million purchase price to Molinaro on May 7, 1986--$1.3 million of which came from the escrow account while $900,000 was derived from "other sources." Regulatory approval for Stump's purchase of Ramona was denied on June 23, 1986.
 
 
 4
 The Federal Home Loan Bank Board determined that Ramona was insolvent on September 12, 1986, and appointed FSLIC as Ramona's receiver. FSLIC as receiver assigned the rights, claims, and liabilities of Ramona to FSLIC in its corporate capacity, apparently in an attempt to create federal jurisdiction under 28 U.S.C. Sec. 1345 and 12 U.S.C. Sec. 1730(k)(1). In its corporate capacity, FSLIC then filed a complaint against Molinaro and numerous other defendants.
 
 
 5
 On July 22, 1987, shortly after FSLIC filed its First Amended Complaint, Molinaro was arrested on charges not directly related to this action. He subsequently learned that the FBI was investigating him and that he might soon be indicted on charges pertaining to his activities with Ramona. Molinaro was afraid that the criminal investigators would take advantage of any inculpatory evidence generated during the course of civil proceedings, and on August 18 he filed a motion to stay all civil proceedings or alternatively to stay all civil discovery indefinitely. His motion was denied on September 14.
 
 
 6
 On September 18, 1987, FSLIC filed a motion for summary judgment on its claims against Molinaro for breach of fiduciary duty, conversion, fraud, and money had and received. A hearing was scheduled for October 19 but was continued to November 9. Molinaro chose not to file counter-affidavits in response to FSLIC's motion, claiming risk of self-incrimination. On November 4, five days before the summary judgment hearing, Molinaro requested a continuance so that he could conduct discovery. This request and a renewed request to stay all civil proceedings were denied on November 9, and the district court granted FSLIC's motion for summary judgment. The court entered final judgment in favor of FSLIC for $6.4 million plus interest. Molinaro now appeals, challenging 1) the district court's subject matter jurisdiction; 2) the denial of a stay of civil proceedings in the face of potential related criminal action; 3) the denial of a continuance of the summary judgment hearing to allow Molinaro to conduct discovery; 4) the legal standard used to impose liability; and 5) the computation of damages.
 
 DISCUSSION
 
 7
 This court reviews de novo a trial court's grant of summary judgment. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, the court determines that there remains no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986); Fed.R.Civ.P. 56(c).
 
 Jurisdiction
 
 8
 FSLIC, in its capacity as Ramona's receiver, assigned its claims to FSLIC in its corporate capacity. FSLIC maintains that, as a corporation, it is an agency of the federal government under 12 U.S.C. Sec. 1730(k)(1)(A) (1982), and is therefore entitled to federal agency jurisdiction pursuant to 28 U.S.C. Sec. 1345 (1982). Molinaro claims that such an assignment is invalid and insufficient to avoid the jurisdictional restraints of section 1730(k)(1). According to Molinaro, all jurisdictional grants under section 1730(k)(1), including subsection (A) under which FSLIC claims jurisdiction, are subject to the proviso in subsection (C):
 
 
 9
 Provided, That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under laws of the United States.
 
 
 10
 12 U.S.C. Sec. 1730(k)(1)(C) (emphasis in original).
 
 
 11
 Ramona was a state-chartered institution. FSLIC is essentially acting in its receivership capacity, and this suit involves only the rights and obligations of investors, creditors, and stockholders. If this proviso applies to subsection (A), FSLIC's claims against Molinaro arise under state law and do not give rise to federal jurisdiction. Molinaro, therefore, argues that an intra-agency assignment of the right to pursue Ramona's claims from FSLIC/receiver to FSLIC/corporation is ineffective to confer federal jurisdiction under subsection (A) because Congress has specifically provided that no such jurisdiction exists in the circumstances set forth in subsection (C).
 
 
 12
 This argument was considerably more compelling before the Supreme Court's decision in Federal Savings & Loan Ins. Corp. v. Ticktin, --- U.S. ----, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989), which considered whether FSLIC is entitled to federal agency jurisdiction when acting as a receiver for a state-chartered financial institution. The Court held that the quoted proviso in section 1730(k)(1)(C) applies only to those cases involving FSLIC "federal question" jurisdiction under section 1730(k)(1)(B) and (C). The proviso does not apply to subsection (A) entitling FSLIC to federal agency jurisdiction. Ticktin, 109 S.Ct. at 1629. The Court concluded that "[b]ecause the proviso does not apply to clause (A), Sec. 1730(k)(1) is not an Act of Congress that has 'otherwise provided' a limitation on the jurisdictional grant in Sec. 1345. Accordingly, the District Court has federal agency jurisdiction over the FSLIC's action." Id.
 
 
 13
 Ticktin requires the same result here. The validity of FSLIC's intra-agency assignment of Ramona's claims is jurisdictionally irrelevant, because FSLIC is entitled to federal agency jurisdiction whether it brings an action in its corporate or receivership capacity. The district court, therefore, correctly concluded it had jurisdiction to hear this action.
 
 Stay of Civil Proceedings
 
 14
 Molinaro claims that the district court erred in refusing to stay this civil action pending the outcome of any criminal proceedings. We review a district court's ruling on a party's request to stay proceedings for an abuse of discretion. Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir.1983).
 
 
 15
 While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution. Securities & Exchange Comm'n v. Dresser Indus., 628 F.2d 1368, 1375 (D.C.Cir.), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); see generally United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). Molinaro concedes that he has no absolute constitutional right to a stay, but nevertheless asserts that under the circumstances of this case, the court abused its discretion by refusing to stay the civil proceedings. We disagree.
 
 
 16
 A court must decide whether to stay civil proceedings in the face of parallel criminal proceedings in light of the particular circumstances and competing interests involved in the case. Dresser Indus., 628 F.2d at 1375. Obviously a court should consider the extent to which the defendant's fifth amendment rights are implicated. Id. at 1375-76. Other factors a court should consider will vary according to the case itself, but generally will include:
 
 
 17
 (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.
 
 
 18
 Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 56 (E.D.Pa.1980); see Kordel, 397 U.S. at 11-12, 90 S.Ct. at 769-70; Dresser Indus., 628 F.2d at 1374-76.
 
 
 19
 The district court weighed all of these factors in its decision to deny Molinaro's motion for a stay. The court determined that FSLIC would be prejudiced by delay since Molinaro continued to attempt to dispose of his assets; the action had been pending for a year, and the court had an interest in clearing its docket; and the interests of nonparties, i.e., Ramona's depositors, and the public would be frustrated by further delay. The court concluded that all factors weighed in favor of denying Molinaro's motion for a stay.
 
 
 20
 The court did not expressly deal with the burden on Molinaro, but it noted that no related criminal indictments were pending against Molinaro at the time of its ruling. As for his fifth amendment privilege assertions, Molinaro had already given a partial deposition to FSLIC attorneys which provided the basis of support for FSLIC's summary judgment motion. Moreover, nothing prevented Molinaro from responding to FSLIC's motion with information that did not tend to incriminate him. Under these circumstances, any burden on Molinaro's fifth amendment privilege was negligible.
 
 
 21
 The case for staying civil proceedings is "a far weaker one" when "[n]o indictment has been returned[, and] no Fifth Amendment privilege is threatened." Dresser Indus., 628 F.2d at 1376. The possibility that criminal indictments would be brought against Molinaro may have made responding to civil charges more difficult for him, but the court did not abuse its discretion by deciding that this difficulty did not outweigh the other interests involved. Under the circumstances presented to the district court when the motion was made, the court did not abuse its discretion by denying Molinaro's motion for a stay.
 
 Continuance
 
 22
 Molinaro also challenges the trial court's refusal to grant his eleventh-hour motion for a continuance to conduct discovery. This challenge similarly must fail. "[T]he decision to grant or deny continuances is in the sound discretion of the trial judge and will not be overturned except on a showing of clear abuse." Rios-Berrios v. Immigration & Naturalization Service, 776 F.2d 859, 862 (9th Cir.1985). No such showing was made here.
 
 
 23
 The parties make much of Molinaro's reliance on rescheduled depositions and his passive pursuit of discovery. The bottom line, however, is that further discovery would not have benefited Molinaro under the theory of liability used by the district court. Molinaro admitted knowingly receiving diverted loan proceeds. This admission was sufficient to impose liability on Molinaro for breach of his fiduciary duty as an officer and director of Ramona according to the district court's standard. Nothing Molinaro could have gleaned from the rescheduled depositions would have negated his own admissions or altered his liability. The district court did not abuse its discretion by refusing to delay ruling on FSLIC's summary judgment motion while Molinaro engaged in fruitless discovery.
 
 Standard of Liability
 
 24
 Although further discovery would not have aided Molinaro under the standard of liability imposed, the question remains whether that standard was correct. The district court relied on Fleishhacker v. Blum, 109 F.2d 543 (9th Cir.), cert. denied, 311 U.S. 665, 61 S.Ct. 23, 85 L.Ed. 427 (1940), in which the court, citing California case law and the Restatement of Restitution, stated the "settled principle" that
 
 
 25
 a bank officer who receives a bonus or other consideration for procuring a loan of the bank's funds commits a breach of trust, and that the consideration so paid belongs to the bank and may be recovered by it ... even though the bank has suffered no damage and even though the officer may have acted in good faith.
 
 
 26
 Id. at 545-46 (citations and footnote omitted). While a bank officer may properly be held liable for breach of fiduciary duty under these circumstances, we hold that such liability extends only to the profits gained from such a breach.
 
 
 27
 In Fleishhacker, a bank president (Fleishhacker) caused his bank to make several loans to a business venture, in exchange for which the business venture gave him a salary and some shares of stock. Although the loans were repaid and the bank suffered no damage, the court found that Fleishhacker had committed a breach of trust and was liable to the bank for the money and stocks he received. "In the discharge of his high trust the law holds a responsible agent ... to standards of probity and fidelity more lofty than those of 'the market place'. These high standards this court is not disposed to whittle down." Id. at 547. Neither are we so disposed. The heightened duty inherent in a fiduciary relationship justifies imposing liability for breach of that duty regardless of good faith or lack of damage to the beneficiary, because such a standard "is not based on harm done to the beneficiary in the particular case, but rests upon a broad principle of preventing a conflict of opposing interests in the minds of fiduciaries, whose duty it is to act solely for the benefit of their beneficiaries." Restatement of Restitution Sec. 197 comment c (1937).
 
 
 28
 Molinaro owed just such a duty to Ramona. If he received a portion of loan proceeds which he helped to obtain, Molinaro breached that duty. Moreover, there was no reasonable dispute over the facts establishing that breach--the primary support for FSLIC's summary judgment motion came from Molinaro's own admissions. The district court, therefore, properly granted summary judgment as to Molinaro's liability for breach of his fiduciary duty.
 
 
 29
 Liability for breach of fiduciary duty, however, is not unlimited. Cases and commentators agree that the beneficiary's recovery for a fiduciary's breach of duty is restricted to the profits gained from that breach. See Farmers' & Merchants' Bank v. Downey, 53 Cal. 466, 468 (1879) (bank director liable for profits received from borrowers in exchange for lending the bank's funds); Bank of America v. Ryan, 207 Cal.App.2d 698, 706, 24 Cal.Rptr. 739, 744 (1962) (bank officer who receives or retains profits in violation of his fiduciary duty holds what he receives in constructive trust for the bank); Broadway Federal Savings & Loan Ass'n v. Howard, 133 Cal.App.2d 382, 393, 285 P.2d 61, 69 (1955) (savings and loan association may recover secret profits collected by its president since officers act in fiduciary capacity and may not secure personal advantage against the association); Restatement, Sec. 197 ("Where a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary.") (emphasis added).
 
 
 30
 The district court, however, did not consider the extent to which Molinaro profited from his breach of fiduciary duty. Instead, the court found Molinaro liable for the entire amount of diverted loan proceeds he received. The district court seems to have relied on language in Fleishhacker that fiduciaries are liable for the consideration they receive from the breach of their duty. See 109 F.2d at 545-47. Under the district court's interpretation, Molinaro received the entire $6.4 million in diverted loan proceeds in consideration for his breach of duty and was therefore liable for that amount. As we explain, such an interpretation sweeps too broadly.
 
 
 31
 "Consideration" is defined as "[s]ome right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." Black's Law Dictionary 277 (5th ed. 1979). The court in Fleishhacker used the term "consideration" as a synonym for "profit": the money Fleishhacker received for his breach of duty was also his profit since he personally gave nothing of value to the loan recipient in exchange for the value received. The district court, on the other hand, applied the Fleishhacker court's use of "consideration" more broadly, finding that consideration meant the total amount received by Molinaro as a result of his breach of fiduciary duty. What the district court overlooked was that Molinaro agreed to give up something allegedly of value, i.e., his stock in Ramona, in addition to his assistance in securing the loan proceeds that eventually financed the sale. In these circumstances, unlike those in Fleishhacker and similar cases where the bank officer received a benefit solely from his breach of fiduciary duty, the amount Molinaro received was not necessarily the amount he profited from his breach of duty. By awarding FSLIC the amount of the loan proceeds Molinaro received rather than considering the extent to which he profited from his breach of duty, the district court erred.
 
 
 32
 Admittedly we are faced with an unusual situation. Molinaro sought to sell his interest in the savings and loan itself in exchange for the diverted loan proceeds rather than acquire an interest in an outside enterprise for doing nothing other than facilitating the loan itself. These extraordinary circumstances, however, merely emphasize the importance of clearly enunciating the extent to which a fiduciary is liable for breach of duty. Molinaro was entitled to have the value he surrendered in exchange for the funds he received deducted from the amount he holds in trust for Ramona.
 
 
 33
 An example may help clarify this point. Assume Molinaro had agreed to sell Stump a bond for $100,000. The bond has a recognized fair market value of $100,000. Molinaro then participates in having Ramona loan Stump $100,000 to purchase the bond. Molinaro would have breached his fiduciary duty to Ramona to act only in Ramona's interest, but he would not have profited from the transaction by means of his breach of fiduciary relationship. If Ramona is not damaged by the loan transaction, it would not be entitled to recover the $100,000 from Molinaro. In this case, the summary judgment for breach of fiduciary duty was not based on any illegality of the loan to the Copelands but solely on Molinaro's participation in the loan with knowledge that some of the proceeds would be used to purchase his stock. FSLIC, therefore, is entitled to recover only the amount Molinaro profited from his breach of duty to Ramona, not necessarily the entire amount Molinaro received in exchange for his stock.
 
 
 34
 We do not hold that Molinaro may not be liable for the entire $6.4 million he received from the diverted loan proceeds as profit.[1] We hold only that Molinaro's liability for breach of his fiduciary duty is limited to that portion of the diverted loan proceeds which represents his profit from the sale of his interest in Ramona, not necessarily the amount of the diverted loan proceeds he received. The facts supporting Molinaro's liability were not in dispute, but the same cannot be said of the extent to which Molinaro profited from the sales transaction with Stump. Since the measure of FSLIC's recovery involves a disputed issue of material fact, i.e., Molinaro's profit, summary judgment on the issue of the amount of FSLIC's recovery from Molinaro was improperly granted and must be reversed.
 
 
 35
 We also do not decide whether, under a different theory of liability, Molinaro may be liable for that part of the diverted loan proceeds which is not profit. The district court discussed only the standard of liability for breach of fiduciary duty when it explained the reasons for its grant of summary judgment. The grant of summary judgment, however, included counts for fraud, conversion, and money had and received. Molinaro's good faith and damage to Ramona (including the validity of the underlying loan transactions) are not irrelevant to the imposition of liability under these theories, as they are to Molinaro's breach of fiduciary duty, and are very much in dispute in this case. To the extent the district court imposed liability under theories other than breach of fiduciary duty, a grant of summary judgment was precipitous and must be reversed.
 
 CONCLUSION
 
 36
 We do not lightly restrict FSLIC's ability to recover from officers of insolvent savings and loan associations. We recognize the catastrophic condition of the savings and loan industry and the billions of dollars that the taxpayers of this country must pay for the systemic abuses of a few individuals. These individuals, to the extent possible, should be held responsible for their actions. In our zeal to exact reparations, however, we must not be blinded to the requirements of the law as it existed at the time these individuals were acting. Molinaro, and those similarly situated, must be held to the standard we imposed when they acted. According to that standard, Molinaro is entitled to dispute the amount of profit he made through the breach of his fiduciary duty.
 
 
 37
 REVERSED AND REMANDED for determination of the amount of FSLIC's recovery for Molinaro's breach of fiduciary duty, and as to liability for fraud, conversion, and money had and received; in all other aspects AFFIRMED.
 
 
 
 [1]
 Indeed, Molinaro's stock may have been worthless at the time of the attempted sale, and the $6.4 million he received for it would be his profit