916 F.2d 1377
 63 Ed. Law Rep. 492
 Raymond RAMON, a minor, By and Through his father and next
friend; Raymond RAMON, Sr.; Ruben Ventura, a minor, by and
through his mother and next friend; Margaret Johnson, on
behalf of themselves and all others similarly situated,
Plaintiffs-Appellants,
v.
Pete SOTO, Area Director of Education, Phoenix Area Office,
Bureau of Indian Affairs, U.S. Dept. of the Interior; John
Derby, individually and in his official capacity, as
Principal of Phoenix Indian High School; Charles Smith,
individually and in his official capacity, as Asst.
Principal of Phoenix Indian High School; Delmar Nejo,
individually and in his official capacity; Gram Thomas,
Defendants-Appellees.
 No. 88-2690.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 6, 1989*.
Decided Nov. 15, 1989.
As Amended on Denial of Rehearing and Rehearing En Banc Oct. 2, 1990.
 
 James Bell, Youth Law Center, San Francisco, Cal., for plaintiffs-appellants.
 Robert Moeller, U.S. Dept. of the Interior, Office of Sol., Arthur Garcia, Asst. U.S. Atty., Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before FARRIS, THOMPSON and TROTT, Circuit Judges.
 
 ORDER
 
 1
 The opinion filed in this case on November 15, 1989 and published in the advance sheets at 889 F.2d 891 (previously withdrawn from publication) is ordered amended in its entirety as reflected by the Amended Opinion filed this date. With the opinion so amended, the panel has voted unanimously to deny the petition for rehearing and to reject the suggestion for rehearing en banc.
 
 
 2
 The full court has been advised of the Amended Opinion and the suggestion for rehearing this case en banc, and no judge has requested a vote on the en banc suggestion. Fed.R.App.P. 35(b).
 
 
 3
 The petition for rehearing is denied, and the suggestion for rehearing en banc is rejected.
 
 AMENDED OPINION
 TROTT, Circuit Judge:
 
 4
 Raymond Ramon and Ruben Ventura, Papago Indians and students at Phoenix Indian High School, appeal the district court's order denying their motion for attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412 (1988). We vacate the district court's decision and remand for further proceedings consistent with our opinion.
 
 
 5
 * Introduction
 
 
 6
 On April 2, 1981, Ventura and Ramon filed a class action on behalf of all present and future students at Phoenix Indian High School, an off-reservation boarding school operated by the Bureau of Indian Affairs ("BIA"), a division of the United States Department of the Interior. The defendants named in this action are Pete Soto, Area Director of Education for the BIA; John Derby, principal of Phoenix Indian High School; Charles Smith, assistant principal of Phoenix Indian High School; and two employees of Phoenix Indian High School, Delmar Nejo and Gram Thomas. The complaint states that Soto, Derby, and Smith are being sued both individually and in their official capacities.
 
 
 7
 The following events precipitated the complaint. On February 18, 1981, Ramon and Ventura were sent home after breaking into the school kitchen to make ham and cheese sandwiches. According to the complaint, the students were not informed whether they were being suspended or expelled, and were not provided with written notice of the charges against them or an opportunity for a hearing. Upon their readmittance to school, both students allegedly were harassed, intimidated, and physically abused by defendants Smith, Nejo, and Thomas. The complaint also stated that defendant Nejo handcuffed Ventura to a fence for three hours after Ventura returned late to school one evening.
 
 
 8
 The complaint charged, in essence, that such abuses typify Phoenix Indian High School's disregard for its students' procedural rights. Specifically, plaintiffs claimed that suspending or expelling students without written notice and an opportunity for a hearing violated BIA regulations governing student rights, 25 C.F.R. pt. 35 (1980) (redesignated 25 C.F.R. pt. 42 (1989)), the BIA Education Manual, and the Fifth Amendment.[1] Based on these claims,[2] Ramon and Ventura sought a declaratory judgment and preliminary and permanent injunctions prohibiting defendants from proceeding with any disciplinary actions against the plaintiff class until the procedural protections required under pertinent regulations and the Fifth Amendment had been afforded. Plaintiffs also requested general, special, and punitive damages for Ramon and Ventura based on a claim against defendants in their individual capacities under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
 
 
 9
 Defendants moved for summary judgment on October 30, 1981, claiming, among other things, that plaintiffs should be required to exhaust administrative remedies before seeking judicial review. On March 1, 1982, the district court ordered this motion vacated, subject to reinstatement at the request of court or counsel. The district court granted plaintiffs' motion for class certification on April 11, 1983. The certified class included all students at Phoenix Indian High School. On October 31, 1983, the district court held the case in abeyance and directed plaintiffs to exhaust administrative procedures established by the BIA's Office of Education. Ramon and Ventura then took their case through several levels of administrative review. On May 20, 1985, an Acting Deputy Assistant Secretary for the BIA issued a final decision denying plaintiffs relief.
 
 
 10
 While pursuing their administrative appeal, plaintiffs also engaged in settlement negotiations with defendants. In an order filed May 17, 1985, the district court appointed a special master and charged him with conducting an investigation and making recommendations for settlement to the parties and the district court. On September 24, 1985, the parties reached a settlement which called for the school to develop disciplinary procedures complying with BIA regulations and the Fifth Amendment, and for the special master to monitor the situation. The agreement was approved by the special master and incorporated in a court order, dated September 27, 1985, which, pursuant to the terms of the settlement, simultaneously dismissed with prejudice the claims against defendants in their individual capacities. After three years of monitoring, the special master certified to the court that the school had been in substantial compliance with the settlement and recommended that the district court dismiss the suit. The district court adopted the special master's recommendation and dismissed the suit on April 14, 1988.
 
 
 11
 The settlement filed by the parties expressly reserved the issue of attorneys' fees and costs for the special master. On February 18, 1986, plaintiffs filed with the special master an application for attorneys' fees and costs under the EAJA. On April 14, 1987, the special master found that plaintiffs were entitled to attorneys' fees and costs under 28 U.S.C. Sec. 2412(d)(1)(A) and recommended that the district court make an appropriate award. He reached this conclusion on finding that, as required by the terms of the EAJA: (1) plaintiffs had sued the United States government, (2) plaintiffs were "prevailing parties," and (3) the government's position in the litigation was not "substantially justified."[3]
 
 
 12
 On May 20, 1987, the government filed an objection to the special master's findings, asserting that attorneys' fees were not warranted under the EAJA because Congress had not waived sovereign immunity as to the underlying claims. On December 15, 1987, the district court denied attorneys' fees to plaintiffs, reasoning that "[b]ecause the substance of the Plaintiffs' complaint was directed against federal officials acting outside their official capacity, the Plaintiffs have not prevailed against the United States [as required by] the Equal Access to Justice Act." The court denied plaintiffs' motion for reconsideration on April 14, 1988, the same day it dismissed their suit. Plaintiffs filed a notice of appeal of the denial of attorneys' fees on April 22, 1988.
 
 II
 Jurisdiction
 
 13
 Plaintiffs asserted below that defendants' conduct violated the Due Process Clause of the Fifth Amendment and specific procedural requirements imposed by BIA regulations. The district court thus had jurisdiction under 28 U.S.C. Sec. 1331 (1988).
 
 
 14
 Although plaintiffs had not pursued all administrative remedies available to them at the time they filed their complaint, the BIA issued a final decision denying plaintiffs relief well before the district court considered and adopted the special master's Stipulation and Settlement Agreement. Plaintiffs therefore exhausted their administrative remedies as required by the Administrative Procedure Act. See, 5 U.S.C. Sec. 704 (1988).
 
 
 15
 We have jurisdiction under 28 U.S.C. Sec. 1291 (1988).
 
 Standard of Review
 
 16
 We review a denial of attorneys' fees under the EAJA for an abuse of discretion. Oregon Envtl. Council v. Kunzman, 17 F.2d 484, 496 (9th Cir.1987). An abuse of discretion occurs if the district court incorrectly interprets the EAJA. See id. Interpretation of the EAJA is a question of law subject to de novo review. Id.
 
 III
 Discussion
 
 17
 The EAJA sets forth two circumstances in which a court with jurisdiction over a civil suit against the United States has authority to grant attorneys' fees to a prevailing plaintiff. Section 2412(b) gives the court discretion to award fees when the common law or the terms of a statute specifically provide for such an award against any other party. 28 U.S.C. Sec. 2412(b). Section 2412(d)(1)(A) directs the court, except as otherwise provided by statute, to award fees to a prevailing party in a civil action against the United States when the government's position is not substantially justified, unless special circumstances would make an award of fees unjust. 28 U.S.C. Sec. 2412(d)(1)(A).
 
 
 18
 The district court correctly assumed that plaintiffs are entitled to fees under section 2412(d)(1)(A) or not at all. An award under section 2412(b) is unavailable in this case since success on plaintiffs' claims does not make them eligible for fees under a particular federal statute or the common law. We now turn to plaintiffs' request for fees under section 2412(d)(1)(A).
 
 
 19
 We note preliminarily that we need not consider whether section 2412(d)(1)(A) of the EAJA authorizes a fee award based on plaintiffs' Bivens claim directly under the Fifth Amendment. Although the reach of the Supreme Court's decision in Bivens is disputed,[4] courts generally have viewed the case as establishing an action for damages against federal officers in their individual capacities, and not speaking to claims against the United States, where the doctrine of sovereign immunity is still held to apply.[5] The record reveals, and both sides concede, that the district court dismissed with prejudice all claims against defendants in their individual capacities. Therefore, when the district court dismissed the personal liability claims against the individual officers it necessarily extinguished plaintiffs' Bivens action, rendering moot the question whether the EAJA applies in this context.[6]
 
 
 20
 Plaintiffs' complaint was aimed primarily at obtaining equitable relief against the United States in order to put an end to official practices believed to violate BIA regulations and the Fifth Amendment. The APA claim that defendant officers at Phoenix Indian High School failed to comply with BIA regulations thus was directed at them in their official capacities. We have held that federal officials who act within the scope of their delegated power, but who fail to comply with binding statutes or regulations, may nonetheless be acting in an official capacity. See United States v. Yakima Tribal Court, 806 F.2d 853, 860 (9th Cir.1986) (relying on Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 112 n. 22, 104 S.Ct. 900, 914 n. 22, 79 L.Ed.2d 67 (1984)), cert. denied, 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987). If an official violates a statute, but is still operating within the scope of his authority, an injured party may sue him in his official capacity and seek injunctive relief under section 702 of the APA. 5 U.S.C. Sec. 702 (1988). A prevailing party may then collect attorneys' fees under the EAJA. See, e.g., Animal Lovers Volunteer Ass'n v. Carlucci, 867 F.2d 1224 (9th Cir.1989); Oregon Envtl. Council v. Kunzman, 817 F.2d 484 (9th Cir.1987); Southern Or. Citizens Against Toxic Sprays v. Clark, 720 F.2d 1475 (9th Cir.1983), cert. denied, 469 U.S. 1028, 105 S.Ct. 446, 83 L.Ed.2d 372 (1984).
 
 
 21
 The district judge in this case denied an award of fees under the EAJA based on his determination that "Plaintiffs' complaint was directed against federal officials acting outside their official capacity." This finding, which appears to rely more on the form of the pleadings than on a comparison between defendants' official duties and actual conduct, was insufficient to support the denial of fees. It is true that if an official acts manifestly ultra vires--he so violates binding statutes that he operates beyond the scope of his authority--he may only be sued as an individual, see Yakima, 806 F.2d at 859, and the EAJA is inapplicable, see 28 U.S.C. Sec. 2412(d)(2)(C).[7] In the present case, however, we find that while defendants violated BIA regulations, their violations were not so egregious as to indicate they were acting ultra vires. Since defendants were responsible for disciplining students attending the school, they cannot be said to have exercised powers wholly beyond those delegated to them. Yakima, 806 F.2d at 860. Plaintiffs' allegation that Phoenix Indian High School officials failed to observe procedures mandated by BIA regulations in exercising their disciplinary power therefore is a claim against the United States for purposes of the EAJA. Cf. Oglala Sioux Tribe v. Andrus, 603 F.2d 707, 721 (8th Cir.1979) (quoting Morton v. Ruiz, 415 U.S. 199, 236, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974)) (failure of BIA officials to comply with agency regulations is " 'a violation of the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people' ").
 
 
 22
 Plaintiffs' additional claim for equitable relief, based upon alleged Fifth Amendment violations, also constituted a claim against the United States. Moreover, the 1976 amendment to section 702 of the APA waives the government's sovereign immunity in all actions seeking equitable relief from official misconduct, including actions to reverse agency practices alleged to violate the Constitution. The Presbyterian Church v. United States, 870 F.2d 518, 523-25 & 525 n. 9 (9th Cir.1989); Beller v. Middendorf, 632 F.2d 788, 796-97 (9th Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).
 
 
 23
 Finally, we must determine whether plaintiffs "prevailed" on their claims as required by the EAJA. The special master's Stipulation and Settlement Agreement, which called for monitoring of disciplinary procedures, specifically stated that the agreement was intended to bring about Phoenix Indian High School's compliance with students' Fifth Amendment rights and with BIA regulations. To be deemed prevailing, a party need not obtain formal relief. Fitzharris v. Wolff, 702 F.2d 836, 838-39 (9th Cir.1983). Instead, a party may simply have acted as a catalyst in prompting the opposing party to make amends. See McQuiston v. Marsh, 707 F.2d 1082, 1085 (9th Cir.1983). We agree with the special master that plaintiffs' complaint caused Phoenix Indian High School to comply with procedures required by BIA regulations and the Constitution. The favorable terms of the Stipulation and Settlement Agreement indicate that in bringing the present suit plaintiffs helped to remedy the procedural abuses alleged in their original complaint. Thus, they have prevailed on their claims for equitable relief, claims we believe comprised the core of their case against defendants.
 
 CONCLUSION
 
 24
 Plaintiffs are entitled to fees under section 2412(d)(1)(A) of the EAJA unless the government's position was substantially justified or special circumstances would make an award unjust. We therefore AMEND our earlier opinion at 889 F.2d 891, VACATE the district court's denial of attorneys' fees, and REMAND for determination of the two remaining issues.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Plaintiffs' complaint stated three other claims, each of which merits little discussion
 First, plaintiffs alleged that Ramon and Ventura were treated roughly and that Ventura was handcuffed. The special master decided these facts implicated the Eighth Amendment. The Eighth Amendment does not apply in the school setting. See Ingraham v. Wright, 430 U.S. 651, 671, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).
 Second, the complaint asserts that defendants violated certain provisions of the Education of the Handicapped Act, detailed at 20 U.S.C. Sec. 1415 (1988). Ventura, who is handicapped, represents a subclass of plaintiffs on this count. Section 1415 does not apply to Ventura, however, since he attends a school operated by the Department of the Interior. The Education of the Handicapped Act distinguishes between schools under the control of state, intermediate, or local educational agencies, and schools operated for Indian children by the BIA. See 20 U.S.C. Sec. 1411(d), (f) (1988). Section 1415 details procedures to be observed in the former, whereas the Secretary of the Interior is directed to promulgate a separate body of rules governing the latter. See 20 U.S.C. Secs. 1411(f)(2)(A), 1412(5). These rules are contained in 25 C.F.R. pt. 45 (1989). Thus, Ventura and his subclass did not have a cognizable claim under the Education of the Handicapped Act.
 Third, plaintiffs argue that defendants ignored procedural requirements imposed by 45 C.F.R. Sec. 84.36 (1989), adopted pursuant to a provision of the Rehabilitation Act codified at 29 U.S.C. Sec. 794 (1988). We have held, however, that the rights of handicapped children regarding suspension and expulsion are enumerated in the Education of the Handicapped Act rather than the Rehabilitation Act. Doe v. Maher, 793 F.2d 1470, 1479-80 (9th Cir.1986), aff'd as modified sub nom., Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).
 
 
 [2]
 We review plaintiffs' claims for equitable relief as though asserted collectively under the Administrative Procedure Act, 5 U.S.C. Secs. 701-706 (1988). Plaintiffs did not refer to the APA in their complaint, however the counts listed against defendants in their official capacities have been treated throughout this litigation, for all practical purposes, as though asserted under the APA. In any event, this is how the claims are properly characterized since plaintiffs seek review of a final agency decision after exhausting their administrative remedies
 
 
 [3]
 The special master recognized that defendants were sued in their individual capacities as well. From this finding he went on to conclude that section 2412(d)(1)(A) applies to constitutional tort claims against individual officers and thus supports an award of fees under the EAJA. As we explain below, our disposition of this case makes it unnecessary for us to reach that issue
 
 
 [4]
 For instance, contrary to the view now prevailing in the courts, Professor Kenneth Culp Davis believes that Bivens is not limited to suits against federal officers in their individual capacities. Rather, he argues that the United States government itself is liable for damages on Bivens grounds when its officers commit constitutional torts, notwithstanding the doctrine of sovereign immunity. K.C. Davis, 5 Administrative Law Treatise Secs. 27:10, :26 (2d ed. 1984); see also, Note, Rethinking Sovereign Immunity after Bivens, 57 N.Y.U.L.Rev. 597 (1982) (summarizing the debate on this subject and advocating Professor Davis's thesis)
 
 
 [5]
 In the Ninth Circuit, see Arnsberg v. United States, 757 F.2d 971, 980 (9th Cir.1985), cert. denied, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); Holloman v. Watt, 708 F.2d 1399, 1401-02 (9th Cir.1983), cert. denied, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); Beller v. Middendorf, 632 F.2d 788, 798 n. 5 (9th Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). Outside the Ninth Circuit, see Clark v. Library of Congress, 750 F.2d 89, 103 (D.C.Cir.1984); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 596 (1st Cir.1982); Keene Corp. v. United States, 700 F.2d 836, 845 n. 13 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983); Brown v. United States, 653 F.2d 196, 199 (5th Cir.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). Cf. Bivens, 403 U.S. at 410, 91 S.Ct. at 2012 (Harlan, J., concurring) ("However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit."); Butz v. Economou, 438 U.S. 478, 504-507, 98 S.Ct. 2894, 2909-2911, 57 L.Ed.2d 895 (1978) (implying that a Bivens claim is one for monetary damages based on personal liability). In light of the impressive array of cases on point, we decline to follow Professor Davis's suggestion that Bivens be held to apply to official capacity suits against the United States
 
 
 [6]
 Our finding here does not significantly reduce the fees to which plaintiffs are entitled under the EAJA, for plaintiffs' Bivens theory was a subsidiary part of their case, the rest of which, as we find below, merits an award unless the district court fails on remand to rule for plaintiffs on two remaining issues
 
 
 [7]
 At a certain point, "a violation of a statute or regulation is so inconsistent with the agent's authority that he divests himself of sovereign immunity." Yakima, 806 F.2d at 860. Ultra vires analysis thus focuses on the scope of an official's delegated power, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908 n. 11, 79 L.Ed.2d 67 (1984), which generally is defined by reference to the statute or regulation setting forth his official duties