Clement Dale KELLY, Plaintiff–Appellee Cross–Appellant,

v.

CITY OF LEESVILLE, Defendant–Appellant Cross–Appellee,

Patrick Anderson, Individually and as Mayor of Leesville, Defendant–Appellee.

No. 89–4163.

United States Court of Appeals, Fifth Circuit.

March 26, 1990.

Henry B. Bruser, III, Gold, Weems, Bruser, Sues & Rundell, Alexandria, La., for City of Leesville and Patrick Anderson.

Louis Berry, Bridgett Brown, Alexandria, La., for Clement Dale Kelly.

Before CLARK, Chief Judge, RUBIN and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A part-time city inspector, dismissed by the newly-elected mayor, sued for damages and reinstatement, claiming that the dismissal was in retaliation for his support of the mayor's opponent and therefore infringed his first amendment rights and, in addition, violated state law. The jury found that his federal rights had not been violated, but awarded damages under state law for breach of contract. We affirm the judgment, but remand for a hearing on the city's claim that sanctions should be imposed on the inspector for frivolously invoking and attempting to support his federal claim.

I

Clement Dale Kelly had been employed as a part-time building and construction inspector for the city of Leesville, Louisiana since 1984. A new mayor, elected in 1986, fired Kelly soon after taking office. Kelly then sued, claiming that the new mayor fired him to give the job as a reward to a political supporter, while Kelly had supported the incumbent mayor. Kelly later added a state law claim for breach of contract, alleging that the City Charter and Ordinances gave the City Administrator exclusive power to fire city employees.

At his initial deposition, Kelly stated in response to several questions, variously phrased, that he had taken no role whatsoever in the electoral campaign of the incumbent mayor, and that he had no personal preference at all regarding the candidates. In response to the City's motion for summary judgment and in support of his cross-motion for summary judgment, however, Kelly filed an affidavit stating that he had passively supported the incumbent mayor, had driven around with him on election day, and had been at his home during the night of the election. The City then moved for sanctions under Rules 11 and 56(g), based on the inconsistencies between Kelly's testimony in his deposition and his statements in his affidavit.[1]

The magistrate to whom the motions for summary judgment had been referred recommended that the City's motion be granted and that sanctions be imposed on Kelly. The district court denied both motions for summary judgment, holding that Kelly's affidavit created a disputed issue of material fact that precluded summary judgment for either party. The district court also ordered that a hearing "on the additional issues presented" be scheduled for a convenient future date. That hearing was never held, and the district court has never granted or denied the motion for sanctions.

At trial, Kelly offered no evidence of his political activities regarding his federal claim beyond a reiteration of the statements made in his deposition and affidavit. The jury returned a verdict against him on that issue, but found that Kelly had been terminated in violation of the City Charter, and awarded him $29,000 damages. Both parties appeal, asserting various errors.

II

The City appeals the district court's denial of its motion for summary judgment on Kelly's federal claim. For his part, Kelly argues that the jury's verdict against him on his first amendment claim was contrary to the law and the weight of the evidence.

A

We decline to address the City's argument, since it does not affect the disposition of this appeal. Even if the trial court should have rendered summary judgment

---

1. *See* Fed.R.Civ.P. 11, 56(g).

on the federal claim, the court would still have had discretion to continue to exercise pendent jurisdiction over the state law claim.[2] To reverse the district court's denial of summary judgment to the City and remand so that the district court could now decide retroactively whether or not it should have exercised this discretion to dismiss the pendent state claim would be to ask that court to decide whether it should undo what has already been done. To require relitigation of the state law claim in state court would be a manifest waste of judicial effort, add to the litigation expense, and delay final decision. Indeed, to vacate the judgment at this time would likely constitute an abuse of discretion. We therefore reject the City's appeal of this issue as raising an issue that is, in effect, moot.

### B

◼ Kelly was an at-will employee who could have been dismissed for any reason at all, save a constitutionally impermissible one.[3] The Supreme Court has held that the first amendment prohibits dismissal of public employees on the grounds of their political affiliation, excepting only those whose jobs involve confidential matters of policy or require the exercise of discretionary political authority.[4]

◼ This exception to first amendment protection for public employees is a narrow one, the delineation of which depends on "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."[5] Neither party addressed this issue directly at trial, and the judge's charge to the jury assumed that Kelly was entitled to the

protection of the first amendment. We need not now decide whether this was correct, however, for there was a factual dispute concerning the actual cause for the new mayor's action which the jury decided adversely to Kelly.

To prove that a termination violates the guarantee of the first amendment, an employee must show that his protected conduct was a "substantial" or "motivating" factor in the decision at issue, shifting the burden to the government agency to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.[6] Kelly testified that the new mayor told him that Kelly's job had been promised to another person as a political favor, that there had been no complaints regarding his part-time schedule, and that he had never been offered the position on a full-time basis.

The City vigorously disputed this version of the facts. On cross-examination, Kelly admitted that there had been complaints that he had been unavailable, and admitted that the new mayor had indicated to Kelly that he planned to make the job of inspector a full-time position. The new mayor also testified that he had received several complaints regarding Kelly's part-time status, and that he had promised to hire a full-time inspector.

Further, the record indicates that Kelly's replacement was hired at the same monthly salary as Kelly had been receiving for his part-time work. For Kelly to have kept the job as a full-time inspector, he would have had to quit his other job, with a significant loss of income. Although Kelly testified that he valued the job of inspector because it presented a career opportunity for him,

---

2. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Grinter v. Petroleum Operation Support Serv., Inc.,* 846 F.2d 1006, 1008 (5th Cir.1988); 13B C. Wright, A. Miller & E. Cooper, Federal Prac. & Proc. § 3567.1 (2d ed. 1984).

3. *See, e.g., McCormick v. Edwards,* 646 F.2d 173 (5th Cir.1981).

4. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

5. *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.

6. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977); *Tanner v. McCall,* 625 F.2d 1183, 1190 (5th Cir.1980); *see Price Waterhouse v. Hopkins,* —— U.S. ——, ——– ——, 109 S.Ct. 1775, 1789–90, 104 L.Ed.2d 268 (1989).

he also admitted that he declined an invitation from the new mayor to apply for the job, now full-time, when Kelly's successor quit to return to private business two years after Kelly had been fired.

Finally, the extent to which Kelly can be said to have done anything that would be protected by the first amendment was also questioned. Both the former and the newly-elected mayors testified that they did not recall that Kelly had engaged in any campaign activities whatsoever. And, as noted above, Kelly's own descriptions of his political activities, made at different times in the litigation, were at least equivocal if not contradictory.

The resolution of these conflicting versions of the facts, and the inferences properly to be drawn from them, are the province of the jury. In reviewing the jury's determination, we need not, and do not, answer the question, now pressed on us by Kelly, but not urged as a matter of law in the trial court, whether the dismissal of an employee so that a political supporter of the new administration may be appointed per se violates the first amendment rights of the dismissed employee. The district court charged the jury that to render a verdict for Kelly it must find that his activities were constitutionally protected. While this is a question of law for the court, not of fact for the jury, Kelly did not object to the charge. The court further charged the jury that it must also find "that the protected first amendment conduct was a substantial or motivating factor in the decision to fire the plaintiff." Since the jury verdict is supported by the evidence, we affirm the judgment rejecting Kelly's federal claim.

### III

◾ The City also renews its call for sanctions. The record suggests to us that Kelly's federal claim was insubstantial: Kelly did little at trial to dispel the suspicion that his affidavit describing his own political activity, made seven months after his first deposition, was engineered to avoid summary judgment. Kelly testified that he had responded to questions in his deposition with the understanding that the questions concerned active, visible support for the incumbent mayor, and that his later affidavit referred to his passive political support for the incumbent.

Misapprehension regarding a whole line of questioning in a deposition may, in some circumstances, be a plausible explanation of seemingly contradictory statements, though this does not explain the more patent contradictions between Kelly's deposition and his affidavit. Kelly's brief on appeal also renews his claim, made at trial, that his deposition testimony was a product of lengthy, intimidating questioning without a chance to take even a short break. This claim was largely discredited during a colloquy between the trial judge, Kelly, and his counsel, and its spurious renewal here only reinforces the suspicion that the discrepancies in Kelly's statements were genuine and willful, meriting sanctions.

The suspicion of appellate judges, however, is not the test of whether the pleadings were not "well grounded in fact" at the time they were filed, the standard for sanctions under Rule 11, or whether they were made in bad faith, the standard under Rule 56(g).[7] As we noted in *Thomas v. Capital Security Services, Inc.*,[8] Rule 11 reposes authority in the district court to impose sanctions and, if it decides to do so, to select the appropriate one.[9] The provisions of Rule 56(g) are largely analogous, though the caselaw on point is sparse.[10] The district court noted that sanctions might be called for, but made no final determination. We therefore remand this issue to the district court so that it may rule on the City's motion.

### IV

◾ Kelly claims that he is entitled to attorney's fees under the Civil Rights At-

---

7. *See* Fed.R.Civ.P. 11, 56(g).

8. 836 F.2d 866 (5th Cir.1988) (en banc).

9. *Id.* at 876–88.

10. *See Fort Hill Builders, Inc. v. National Grange Mut. Ins. Co.*, 866 F.2d 11, 15–16 (1st Cir.1989).

torney's Fees Awards Act of 1976, 42 U.S.C. § 1988, because his recovery on his state law claim qualifies him as a "prevailing party" under the statute. As this court stated in *McDonald v. Doe*,[11] "This statute [42 U.S.C. § 1988] does not [ ] authorize an award of fees to a party who recovers on a pendent state claim but loses on his civil rights claim."[12] Since the jury expressly found against Kelly on his constitutional claim, he is not entitled to fees under the Act.

## V

Both parties assign points of error regarding Kelly's state law claim. First, Kelly argues that the jury's verdict of damages entitles him to reinstatement as well. As the issue of reinstatement was not submitted to the jury by special interrogatory, it remained within the discretion of the trial court to resolve.[13] The City needs only one inspector, and Kelly refused to apply for the position, now full-time, when it became available after he commenced his suit but before trial. In these circumstances, the trial judge did not abuse his discretion in refusing to order reinstatement.

Kelly also argues that the former mayor should be held solidarily liable in tort, in his personal capacity, for the damages Kelly sustained. Kelly, however, did not assert a tort claim against the mayor. He sought to recover for the breach of his contract with the City. Because Louisiana does not recognize a cause of action for tortious interference with a contract,[14] this claim also fails.

Finally, Kelly claims that he is entitled to interest from the date of legal demand, citing Louisiana Revised Statute 13:4203. This statute provides for interest from the date of judicial demand for damages arising "ex delicto," as opposed to "ex

contractu." As the Louisiana Court of Appeals explained in *Davis v. LeBlanc:*[15] "The classical distinction between 'damages ex contractu' and 'damages ex delicto' is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons."[16] Kelly asserted no tort claim either in his pleadings or in his request for jury charges. Indeed, his argument that what in fact occurred was a tort is unpersuasive. Kelly's termination was a violation of a contractual obligation owed specifically to him by the City, not a general duty owed to the public at large. Hence, he is not entitled to interest from the date of demand.

The City claims that it was entitled to judgment notwithstanding the verdict on Kelly's state law claim, asserting that this was an issue of law to be decided by the judge. The district court judge, denying the City's post-trial motion for judgment notwithstanding the verdict, noted that he agreed with the jury's verdict that the mayor did not have the statutory authority to fire Kelly. Without deciding whether or not this issue was properly submitted to the jury, we also agree with the trial court's determination that the mayor did not have the right to fire Kelly, and therefore with the jury verdict that the mayor's action constituted a breach of Kelly's contractual relationship with the City.

The City also assigns error to one of the court's instructions to the jury on Kelly's state law claim. The record does not show that an objection was made, as is required to preserve the issue for appeal,[17] but the City argues that the transcript erroneously failed to note its objection. If

**11.** 748 F.2d 1055 (5th Cir.1984).

**12.** *Id.* at 1056.

**13.** *See* Fed.R.Civ.P. 49(a).

**14.** *See Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 884 (5th Cir.1986).

**15.** 149 So.2d 252 (La.App.3d Cir.1963).

**16.** *Id.* at 254.

**17.** Fed.R.Civ.P. 51.

the record is in error, the proper remedy would have been to move to correct it.[18]

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and the case is REMANDED for further proceedings.