United States Court of Appeals,

Fifth Circuit.

No. 91-3837.

ENPLANAR, INC., V. Keeler & Company, Inc. and Dragon Limited, Inc., Plaintiffs-Appellants,

v.

John MARSH, In His Official Capacity as Secretary of the Army of the United States, et al., Defendants-Appellees.

Jan. 19, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA and GARWOOD, Circuit Judges and WERLEIN,[*] District Judge.

GARWOOD, Circuit Judge:

This case involves the grant of summary judgment against a suit for unspecified damages from a three-month suspension of a discretionary minority set-aside program. E.J.A., Inc. (EJA); Enplanar, Inc. (Enplanar); Dragon Limited, Inc. (Dragon); and V. Keeler & Co., Inc. (Keeler) appeal the district court's grant of summary judgment in favor of the United States Army Corps of Engineers (the Corps). We affirm.

**Facts and Proceedings Below**

This case relates to the Corps' administration of its set-aside program for minority businesses (the 8(a) program), as described in the Small Business Act § 8(a), 15 U.S.C. § 637(a). The operation of the 8(a) program is delineated in *Fordice Constr. Co. v. Marsh,* 773 F.Supp. 867, 869-70 (S.D.Miss.1990). As noted in that opinion, Congress created the 8(a) program to encourage minority small-business enterprises. *Id.* at 869. Under this program, the Small Business Administration (SBA) determines which minority businesses are eligible to participate in the 8(a) program. 15 U.S.C. § 637(a)(4)-(8). The SBA then acts as an intermediary between government procurement agencies—such as the Corps—and these certified minority businesses. Under this system, a procurement agency's proposed project may be placed in the 8(a) program in one of three ways, all

[*]District Judge of the Southern District of Texas, sitting by designation.

of which are entirely at the discretion of the SBA and the procurement agency: (1) the SBA advises the procurement agency of an 8(a) firm's capabilities and asks that agency to identify and submit to the 8(a) program its proposed contracts that support the firm's business plan; (2) the SBA identifies a specific contract for a particular 8(a) firm and asks the agency to offer the contract to the 8(a) program for the firm; or (3) the agency reviews its proposed contracts and identifies and offers those which are suitable for the 8(a) program. *Id.* at 637(a)(1)(A); 48 C.F.R. §§ 19.800(b), 19.803(a)-(c), 19.804.[1] Once a contract has been set aside for minority businesses, the SBA then selects the minority contractor best suited to perform the contract. 15 U.S.C. § 637(a)(1)(B), (a)(7)(A); 13 C.F.R. § 124.307(d). The SBA, on behalf of the minority contractor, then certifies to the procurement agency that the minority contractor can perform the contract, and the SBA begins to negotiate with the agency's contracting officer upon mutually agreeable terms and conditions. 48 C.F.R. § 19.800(c). Alternatively, upon mutual agreement between the SBA and the agency, the minority contractor itself may be allowed to negotiate with the agency. 48 C.F.R. § 19.808-1(b). Throughout this process, it is within the procurement agency's discretion to withdraw the project from the 8(a) program before the contract is awarded. 48 C.F.R. § 19.800(c). Finally, the minority contractor cannot be awarded the project if the price of the contract results in a cost to the procurement agency which exceeds a fair market price. 48 C.F.R. § 19.806(b).

Prior to the case *sub judice,* three nonminority small-business contractors challenged the Corps' joint administration of the 8(a) program with the SBA. Specifically, these contractors challenged the Corps' submission practice whereby it set aside one-hundred percent of its small-business contracts for minority businesses. These contractors contended that in setting aside one-hundred percent of the contracts, the agencies failed to consider the effect a minority enterprise set-aside would have on competing nonminority small-business contractors. The district court

---

[1]A minority contractor may also influence this discretionary process through informal "self-marketing." Self-marketing is a way for 8(a) contractors to notify a procurement agency of projects the agency could choose to refer to the SBA. The 8(a) contractors contact that agency's personnel and market their services concerning projects that the contractors could work on. The agency can then decide to refer the project to the SBA which may, in its discretion, give the project to the contractor who engaged in the self-marketing. 48 C.F.R. §§ 19.803(c), 19.804-2(a)(12).

initially dismissed the suit on mootness grounds, and we reversed. *Valley Constr. Co. v. Marsh,* 714 F.2d 26 (5th Cir.1983) (*Valley I* ). On remand, the district court held that the Corps' administration of the 8(a) program impermissibly excluded the nonminority small-business contractors in violation of 42 U.S.C. § 2000d, and that the SBA ignored its statutorily directed policy pursuant to 15 U.S.C. § 637(d)(1) requiring it to consider the economic impact on these contractors. *Fordice,* 773 F.Supp. at 882. The government initially appealed the decision, but it withdrew its appeal on October 23, 1990.

In early November 1990, in response to the *Fordice* decision and the withdrawal of the government's appeal, the Corps sought legal guidance from Army Headquarters concerning the continuing legality of its administration of the 8(a) program, and the possible personal liability of the contracting officers in submitting contracts to the SBA under the program. While awaiting advice, the Corps continued to abide by previously awarded 8(a) contracts, and exercised the options on all 8(a) contracts for extending performance by the minority contractor into later years. Although the Corps did not terminate any pre-existing 8(a) contracts, it did hold in abeyance any ongoing activity in reference to 8(a) contracts not yet awarded. This abeyance continued until January 22, 1991, when the Corps received guidance from Army Headquarters notifying it that, as to the currently administered 8(a) program, there existed no legal impediment to awarding contracts to the SBA through the 8(a) program.[2]

On January 8, 1991, EJA, Enplanar, Dragon, and Keeler (collectively, the Contractors) brought suit in Louisiana seeking injunctive and declaratory relief against, *inter alia,* the Corps and its personnel in their official capacities, and the SBA (collectively, the Defendants), claiming that the Corps' suspension of their 8(a) referrals to the SBA discriminated against the Contractors in violation

---

[2]Subsequently, this advice was at least partially confirmed by this Circuit, which held in a separate case that the Corps there properly administered the 8(a) program in conformity with newly promulgated regulations. *See* 48 C.F.R. 19.804-1(2)(3); *Valley Constr. Co. v. Marsh,* 984 F.2d 133, 135 (5th Cir.1993) (*Valley II* ) (Corps reasonably interpreted regulation not to require "impact analysis" for "new, non-recurring construction contracts"). The appellant attempted to rely on *Fordice* as authority for the proposition that the Corps was still improperly awarding contracts to minority businesses under the 8(a) program because it was not considering the economic impact of nonminority businesses, but we determined that "[n]ot only is *Fordice* factually distinguishable from this case, but it is non-binding on this court." *Id.* at 135 n. 5.

of 42 U.S.C. §§ 1981, 1985(3), 2000d. The Contractors also argued that the suspension was an unconstitutional taking of their property rights without due process.

Specifically, EJA alleged that, prior to the abeyance, the Corps failed to renew the Southwest Pass program even though EJA had worked on the project during the previous year. The Corps did not dispute that in April of 1990, it had decided not to place the project in the 8(a) program because it already had four of its ten small-business projects in the program, and was concerned about the potential legal liability of adding more small-business projects to the 8(a) program. EJA alleged that it had a reasonable expectancy that the project would be renewed but because of the constitutional concerns, the project was pulled from the 8(a) program. Enplanar alleged that it was in negotiations concerning two 8(a) contracts but the Corps' suspension had indefinitely postponed the implementation of these projects. Dragon and Keeler alleged that the suspension had indefinitely delayed the Corps from making referrals for other, unspecified, future projects which the SBA might give to Dragon or Keeler when and if the projects materialized. Finally, Keeler also alleged that the Corps had wrongfully failed to award it the Cotton Meade project.[3] The Contractors asked for injunctive relief which would remove the suspension and order the Corps to award the Southwest Pass project to EJA and the Cotton Meade Project to Keeler.

On February 8, the district court directed the parties to brief whether the SBA was a necessary party in light of the fact that the suspension had been lifted. On February 27, in its responsive brief, the Contractors stated that the SBA was not a necessary party, and indicated in the summary of its argument that all injunctive relief was moot. However, in the argument itself, they asked for injunctive relief as to the Cotton Meade project. On March 13, the district court denied the Contractors' partial motion for summary judgment seeking injunctive relief finding that all such relief was moot.

The Defendants then filed motions for summary judgment and for change of venue. On March 26, the magistrate stayed discovery pending a ruling on the venue motion. The Contractors

_____

[3]Keeler began negotiating for the Cotton Meade project on April 25, 1989. The Corps withdrew the project from the 8(a) program on August 28, 1990. Keeler claimed that this project was withdrawn in bad faith.

made a Rule 56(f) motion to compel discovery, which was denied. Subsequently, the Contractors filed an amended complaint alleging post-suspension claims for retaliation and unconstitutional interference with the Contractors' rights of access to the courts, based on the Corps engineers' refusal to meet with the Contractors during the pendency of this suit. This amended complaint added as defendants Corps' engineers Stephenson W. Page (Page) and Robert Green (Green) in their individual capacities (the original complaint had included them in their official capacities). It also requested attorneys' fees, claiming that the Contractors' lawsuit caused the Corps to lift its suspension. In response, the Defendants filed a supplemental memorandum in support of their motions for summary judgment, addressing the new claims.[4] On July 15, the district court granted summary judgment on all of the Contractors' claims except for Keeler's claims concerning the Cotton Meade project. These latter claims were transferred to Mississippi based on the Defendants' motion for change of venue.

## Discussion

The Contractors now argue on appeal that the district court erred by: (1) denying their motion for partial summary judgment on the merits for injunctive relief; (2) denying their additional discovery; (3) prematurely ruling on their claims; (4) granting summary judgment against their claims concerning the Defendants' alleged suspension of the 8(a) program and retaliation; (5) dismissing their claim for attorneys fees; and (6) granting the change of venue motion regarding Keeler's Cotton Meade project claims.

I. Denial of Injunctive Relief

The Contractors contend that the district court erred in denying as moot their motion for partial summary judgment concerning injunctive relief. They admit that the resumption of the 8(a) program did moot their request for injunctive and declaratory relief which sought to lift the Corps' suspension of the 8(a) program. However, they argue that the district court erred in ruling that they also were not entitled to injunctive relief concerning the Southwest Pass project and the Cotton

---

[4]This response also included a supplemental memorandum concerning the Defendants' earlier motion to dismiss the complaint against Green and Page. The Defendants argued that their service had been improper under Federal Rule of Civil Procedure 4(c)(2)(C)(ii) and that therefore their complaint should be dismissed pursuant to Rule 12(b)(5).

Meade project. They contend that the district court erroneously found all of their requested injunctive relief moot based on their statement summarizing the argument in their brief that the Corps' resumption of awarding new 8(a) contracts "moots all injunctive relief concerning the 8(a) Program." They now contend that the argument in their brief made clear that only the injunctive relief requesting the suspension's removal was moot and that the relief regarding the specific projects was not moot. We tend to agree. A party should not fear the forfeit of his requested relief based merely on a statement made in the introductory section of his brief summarizing his argument. However we still find that the district court did not err in denying such relief.

In *Valley I,* we held that as to the Corps' administration of the 8(a) program, "injunctive relief would be improper because a necessary party to the suit is the SBA, which administers the overall § 8(a) minority enterprise set-aside program. The Small Business Act, 15 U.S.C. § 634(b)(1), precludes injunctive relief against the SBA. We ... will not allow the contractors to obtain indirectly (against the Army) what they cannot obtain directly (against the SBA)." 714 F.2d at 29.[5] We find that this holding is the controlling law in this case.[6] The district court did not err in finding that the

_____

[5]The Contractors argue that the SBA is no longer a party in this case except for its possible liability as to attorneys' fees, and that any injunctive relief granted concerning the Southwest Pass and Cotton Meade projects would not affect the SBA. We disagree. If a court ordered the Corps to award these projects to specific 8(a) participants, this order would also require injunctive relief concerning the SBA's conduct as to its statutory duties regarding its selection of 8(a) contractors for a specific project, and its subsequent negotiations with a procurement agency concerning the terms of the project's contract. *See* 13 C.F.R. §§ 124.307(d), 124.308(d), 124.309; 48 C.F.R. § 19.800(c).

[6]The Contractors argue that this holding is no longer binding because The Federal Courts Improvement Act of 1982 as codified at 28 U.S.C. § 1491(a)(3) now allows injunctive relief against the SBA—and by extension, against agencies participating in the SBA's programs. This Court has not addressed the effect that section 1491(a)(3) has on the injunctive immunity of the SBA, although other courts have recognized that this law abrogates the SBA's injunctive immunity in certain circumstances. *See Cavalier Clothes, Inc. v. United States,* 810 F.2d 1108, 1111-112 (Fed.Cir.1987); *Related Industries, Inc. v. United States,* 2 Cl.Ct. 517 (1983). However, we need not decide this issue because section 1491(a)(3) applies only to cases brought before the United States Court of Federal Claims. 28 U.S.C. § 1491(a)(1); *Cavalier,* 810 F.2d at 1112 (holding that this section "specifically empowers the Claims Court generally to grant injunctive relief" against the SBA). Since this case was not brought before the Claims Court, section 1491(a)(3) is irrelevant.

The Contractors also argue that other circuits have held that the SBA is subject to injunctive relief in certain circumstances regardless of the applicability of section 1491(a)(3). *See Ulstein Maritime, Ltd. v. United States,* 833 F.2d 1052, 1056 (1st

Contractors were barred from receiving injunctive relief against the Corps concerning its administration of the 8(a) program.[7]

II. Discovery

The Contractors claim that the district court denied them proper discovery so that they were unable to create contested issues of fact to overcome the Defendants' summary judgment motions. Specifically, the Contractors contend that they were improperly denied discovery as to the abeyance of the 8(a) program, and as to Keeler's Cotton Meade claims. In reviewing such claims, "The trial

---

Cir.1987), and cases cited therein. However, as noted by *Ulstein,* this Circuit has "concluded that all injunctive relief directed at the SBA is absolutely prohibited." *Id.* We are bound by our prior decisions that such relief is barred. *See Valley I,* 714 F.2d at 29, *Romeo v. United States,* 462 F.2d 1036, 1038 (5th Cir.1972), *cert. denied,* 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973); *Expedient Servs., Inc. v. Weaver,* 614 F.2d 56 (5th Cir.1980).

[7]Furthermore, as to EJA's claims concerning the Southwest Pass project, during oral argument it was revealed that EJA no longer exists, and therefore it cannot perform the contract. Consequently, the injunctive relief sought is actually "equitable monetary" relief which would provide money damages in lieu of the injunctive relief. Federal courts have granted injunctive relief against governmental units in which the performance of such relief would cost money. *See Edelman v. Jordan,* 415 U.S. 651, 680, 94 S.Ct. 1347, 1364, 39 L.Ed.2d 662 (1974) (Douglas, J., dissenting) (noting that in cases involving injunctive relief against state government entities "[m]ost ... decisions by federal courts have a financial impact on the States"). Furthermore, "a court in equity may award monetary restitution as an adjunct to injunctive relief." *Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987). However, the Contractors do not cite to any authority where a court has granted monetary damages to a party as a substitute for injunctive relief. To allow such a result would destroy the distinction between monetary and equitable damages. *See Edelman,* 415 U.S. at 666, 94 S.Ct. at 1357 (rejecting the contention that in an equity proceeding relief in the form of money damages may be awarded under the rubric of "equitable restitution" because "the relief may be labeled "equitable' in nature"). Furthermore, since EJA's claim concerning the Southwest Pass project names only the Corps and its divisions as defendants, it is thereby suing only the United States. Consequently, it should have brought such a monetary claim in the Court of Claims. *See Amoco Production Co. v. Hodel,* 815 F.2d 352, 359 (5th Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988). We conclude that the district court did not err in denying injunctive relief as to EJA's claims concerning the Southwest Pass project.

As to the Cotton Meade project, the district court's ruling is not before us. Keeler's claims concerning this project have not been disposed of, but merely transferred to a different venue. Therefore, the district court's ruling denying the Contractors' partial summary-judgment motion concerning the availability of injunctive relief as to this project is an interlocutory order not subject to appeal at this time. *See* 10 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2715 p. 636 (noting that "the denial of a Rule 56 motion is an interlocutory order from which no appeal is available until the entry of judgment"); *see also In re Corrugated Container Antitrust Litigation,* 694 F.2d 1041 (5th Cir.1983).

judge's decision to curtail discovery is granted great deference and, thus, is reviewed under an abuse of discretion standard." *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 918 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2340, 124 L.Ed.2d 251 (1993); *see also Landry v. Air Line Pilots Ass'n Int'l,* 901 F.2d 404, 436 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

As to the Cotton Meade project, these claims were not disposed of in summary judgment, but were rather transferred to another court based on the Defendants' motion for change of venue. 28 U.S.C. § 1404(a); FED.R.CIV.P. 21. As such, the claims were still alive and still subject to discovery—albeit in a different venue. The Contractors cite to no authority, and we have found none, holding the district court has abused its discretion in denying merits-related discovery pending ruling on a motion for change of venue. Federal courts have long recognized that two of the factors supporting a change in venue are convenience of the witnesses and the location of records and documents. 15 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE §§ 3851, 3853; *see also Southern Investors II v. Commuter Aircraft Corp.,* 520 F.Supp. 212, 218 (M.D.La.1981); *American Standard, Inc. v. Bendix Corp.,* 487 F.Supp. 254, 264 (W.D.Mo.1980). Although these factors are usually considered in connection with securing the witnesses' and documents' availability for trial, they also necessarily implicate the ease of conducting merits-related discovery in a location which is near the relevant witnesses and documents. Moreover, if a change of venue motion is granted, the discovery is not denied but merely delayed. The Contractors tendered no showing that the delay in discovery somehow prejudiced their case respecting the Cotton Meade project through loss of documents or unavailability of witnesses. *See* FED.R.CIV.P. 61; *FDIC v. Fuller,* 994 F.2d 223 (5th Cir.1993); *King v. Gulf Oil Co.,* 581 F.2d 1184 (5th Cir.1978). The district court did not abuse its discretion in refusing to allow discovery concerning Keeler's claims arising from the Cotton Meade project pending the grant of the Defendants' change of venue motion regarding these claims.

Concerning the remaining claims, which were subsequently disposed of by the district court's grant of the Defendants' summary judgment motion, the Contractors were entitled to receive a

continuance for additional discovery if they:  (i) requested extended discovery prior to the court's ruling on summary judgment;  (ii) placed the district court on notice that further discovery pertaining to the summary judgment motion was being sought;  and (iii) demonstrated to the district court with reasonable specificity how the requested discovery pertained to the pending motion.  *Chevron U.S.A., Inc. v. Traillour Oil Co.,* 987 F.2d 1138, 1155-56 (5th Cir.1993);  *Wichita Falls,* 978 F.2d at 919 (citing *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257 (5th Cir.1991)).

As to the first two requirements, we can review a claim alleging improperly denied discovery only if the complaining party presented to the district court a Rule 56(f) motion or an " "equivalent statement preferably in writing' that conveys the need for additional discovery" in the areas now complained of on appeal.  *Wichita Falls,* 978 F.2d at 919 (quoting *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986)).  In this regard, the Contractors contend in their reply brief that they made a Rule 56(f) motion or its equivalent in six separate instances.  However, as to four of the motions cited to us, even when read broadly as complying with the requirements of Rule 56(f), these motions concern only the Cotton Meade project.  Therefore, as to these motions, the Contractors failed to inform the district court that they were seeking any additional discovery outside the scope of that project.

Only in two motions, do the Contractors bring to the district court's attention a request for additional discovery concerning claims other than the Cotton Meade project.  In their opposition motion and additional opposition motion to the Defendants' motions for summary judgment and for change of venue, the Contractors note in passing that they have been refused a copy of the Justice Department's memorandum concerning its October 1990 determination not to appeal the *Fordice* decision.[8]  In these passing references, they do not explain how this requested discovery would or

---

[8]The Contractors now complain on appeal that they were denied needed discovery as to:  (1) an October 17, 1990 memorandum prepared by a member of the Corps;  (2) a November 15, 1990 memorandum prepared by the Corps' assistant general counsel;  (3) an undated memorandum by the Vicksburg district counsel;  and (4) the September 1990 written recommendations of the Department of Justice, Small Business Administration, and the Department of the Army concerning the constitutionality of the 8(a) program.  None of these matters were the subject of the Contractors' Rule 56(f) motions or equivalents.  In their reply brief, the Contractors assert, with no citation to the record, that they notified the district court of their need for these documents.  After a fruitless search of the record, we conclude that there

could create a fact issue to overcome the Defendants' summary-judgment motion.[9] Therefore, they have failed the third requirement which requires them to demonstrate to the district court with reasonable specificity how the requested discovery would likely pertain to the pending summary judgment motion. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir.1993) (holding that a nonmovant's Rule 56(f) motion was insufficient where "absent from the affidavit was an explanation of ... how the materials listed in the plaintiff's first document request, or in the handwritten list appended to the affidavit, would enable plaintiff to oppose defendant's summary judgment motion by establishing a genuine issue of material fact"). Certainly, we are not requiring clairvoyance on the part of the Contractors. They do not need to know the precise content of the requested discovery, but they do need to give the district court some idea of how the sought-after discovery might reasonably be supposed to create a factual dispute. The mere fleeting mention of a matter, without a description of its likely relevance, will not suffice to alert the district court to the potential importance of that undiscovered item. Therefore, the district court did not abuse its discretion in denying additional discovery.

III. Summary Judgment Procedure

The Contractors complain that the district court prematurely dismissed their claims of retaliation against defendants Page and Green in their individual capacity, and that it prematurely granted summary judgment in favor of all of the Defendants without giving the Contractors notice. Specifically, the Contractors assert that the district court *sua sponte* dismissed their claims against Page and Green because the only motion filed on their behalf was a motion to dismiss for improper service which was subsequently cured. Furthermore, the Contractors claim that the district court granted summary judgment dismissing their amended complaint although the Defendants failed to

---

exists no indication in the record that these matters were brought to the attention of the district court, and therefore, it did not abuse its discretion in refusing to allow discovery concerning these matters.

[9]We infer from the placement of the stray remark noting that the Contractors had been denied this memorandum, that this undiscovered document will bolster their argument that the 8(a) program was suspended based on the Corps' contracting officers fear of personal liability. However, this matter is undisputed.

move for summary judgment as to that complaint.

These two arguments conveniently overlook the Defendants' supplemental memorandum in support of their motions for summary judgment. This document was filed on May 13, 1991, after the Contractors' amended complaint, and it specifically addresses the claims in that amended complaint. This document addresses, as a ground for dismissal, the Contractors' failure to properly serve Page and Green, but it also explicitly discusses various grounds for summary judgment as to *all* the defendants—including the retaliation claims brought against Page and Green. Therefore, this memorandum served to supplement the original summary judgment motion, and provided the Contractors with notice of the Defendants' challenges to their amended complaint. *Cf. Spickard v. Ribicoff,* 211 F.Supp. 555, 558 (W.D.Ky.1962) (granting summary judgment where *no* motion was filed but the movant submitted a brief in support of summary judgment and the nonmovant treated it as a summary judgment motion).[10] Although the district court on July 15, 1991, granted a dismissal as to Page and Green, it also granted summary judgment as to *all* the defendants based on evidence not contained in the pleadings. Under these circumstances, the district court's order to dismiss the complaint as to Page and Green is disregarded, and we instead review the grant of summary judgment as to all defendants—including Page and Green. *See* FED.R.CIV.P. 12(b); *Wilson v. U.S. Dept. of Agriculture,* 991 F.2d 1211, 1214 (5th Cir.1993); *Conoco, Inc. v. Republic Ins. Co.,* 819 F.2d 120, 122 n. 1 (5th Cir.1987) (treating a court's order as granting summary judgment and disregarding the statement in the order directing, "and this case is dismissed"). The district court did not *sua sponte* dismiss the claims against Page and Green, but rather granted summary judgment in their favor based on the Defendants' memorandum in support of summary-judgment filed approximately two months previously. *Cf. Carolinas Cotton Growers Ass'n v. United States,* 785 F.2d 1195, 1200 (4th Cir.1986) ("[I]t is the conclusion of the court that the references to summary judgment are in fact

---

[10]This case is distinguishable from *Reese v. Sparks,* 760 F.2d 64 (3d Cir.1985), which held that a district court could not grant summary judgment on an amended complaint based on a motion for summary judgment filed before that amended complaint if the amended complaint contained new legal theories and additional, different facts. *Id.* at 66. Here, the equivalent of a summary judgment motion was properly filed after the amended complaint and it specifically addressed the new claims alleged in it.

simply mislabelings not affecting the validity of the finding of the court below.").[11]  This equivalent of a motion for summary judgment explicitly also covered the other defendants, and served as the proper basis for the district court's summary judgment as to those defendants.  Therefore, the district court did not prematurely rule on the Contractors' claims.

IV. Summary Judgment Claims

The Contractors contend that the district court erred in granting summary judgment dismissing the claims in their amended complaint.  This Court reviews a district court's grant of summary judgment *de novo,* taking the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party, and determining whether the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Crenshaw v. General Dynamics Corp.,* 940 F.2d 125, 127 (5th Cir.1991);  FED.R.CIV.P. 56(c).  Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Here, the burden of proof was on the Contractors.

The Contractors first argue that the district court erred in ruling that they were not entitled

---

[11]Since the Defendants filed the supplement to their summary-judgment motion some two months before the district court entered summary judgment, the Contractors received sufficient notice of the Defendants' new arguments supporting their summary judgment motion.  *See* FED.R.CIV.P. 56(c) (requiring that the summary judgment motion "shall be served at least 10 days before the time fixed for the hearing");  *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 445 (5th Cir.1991);  *Atchison, T. & S. F. R. Co. v. Buell,* 480 U.S. 557, 568 n. 15, 107 S.Ct. 1410, 1417 n. 15, 94 L.Ed.2d 563 (1987).  This two-month notice also satisfied the "hearing" requirement in Rule 56(c).  As long as the nonmovants have sufficient notice of the pending summary judgment motion, the district court may rule on that motion based solely on the pleadings and evidence on file without a formal conference with the parties.  *See Western Fire Ins. Co. v. Copeland,* 786 F.2d 649, 652 (5th Cir.1986) (holding that the district court erred by not affording the nonmovants "either the ten-day notice of Rule 56(c) or an opportunity to present their evidence");  *Cowgill v. Raymark Indus. Inc.,* 780 F.2d 324, 329 (3d Cir.1985) (holding that nonmovant not entitled to notice of date when motion for summary judgment would be resolved because the nonmovant "is under an obligation to respond ... in a timely fashion and to place before the court all materials it wishes to have considered when the court rules on the motion");  *see also Daniels v. Morris,* 746 F.2d 271 (5th Cir.1984);  *Brumley Estate v. Iowa Beef Processors, Inc.,* 704 F.2d 1351 (5th Cir.1983), *cert. denied,* 465 U.S. 1028, 104 S.Ct. 1288, 79 L.Ed.2d 690 (1984).

to declaratory relief arising from the partial suspension of the 8(a) program.[12]  They contend that because of their minority status they were denied their equal-protection rights, and that the 8(a) program was administered in a discriminatory manner in violation of 42 U.S.C. §§ 1981, 1985(2), 2000d.  However, the Defendants articulated a nondiscriminatory reason for the suspension, namely that it was due to the *Fordice* decision which found that the Corps' practice of awarding a large number of small-business projects to the minority set-aside program was improper.  The Contractors admit in their briefs to this Court that the suspension was due to the Defendants' belief that the 8(a) program was unconstitutional as a result of the *Fordice* decision.  The Contractors even surmise that the presidential administration—at the time of the suspension—believed that all minority set-aside programs were unconstitutional.  They then make the conclusory assertion that such a belief was an unjustified pretext.  We disagree.

The three-month suspension affected only the Corps' decisions regarding the submission of new projects to the SBA.  Such a decision is within the complete discretion of the Corps.  48 C.F.R. § 19.803(a)-(c).  Even when the Corps offers a project to the SBA, it is then within the SBA's complete discretion to accept the project, and then to select a minority contractor to work on the project.  15 U.S.C. § 637(a)(1)(B);  13 C.F.R. §§ 124.307(d), 124.309.  Therefore, this is not an instance where a government agency is accused of discrimination because of its failure to undertake some mandatory requirement;  rather, this is an instance where the agency's discretionary failure can

---

[12]The Contractors also claim on appeal that they were denied a property interest without procedural due process in violation of the due process clause of the Fifth Amendment because the suspension was enacted without notice or a hearing.  As a result, they claim they are entitled to monetary damages on a *Bivens* constitutional-tort claim based on the suspension.  *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).  However, a *Bivens* claim is available only against government officers in their individual capacities.  *Williamson v. U.S. Dept. of Agriculture,* 815 F.2d 368, 380 (5th Cir.1987) (holding that a *Bivens* claim "only applies against the individual appellees in their individual capacities").  In their claim concerning the suspension, the Contractors state that the only defendants are "the Corps of Engineers and the Vicksburg Corps," which are subdivisions of the United States.  The United States may be sued only under the Federal Torts Claims Act.  *See Rykers v. Alford,* 832 F.2d 895, 897 (5th Cir.1987) (holding that "[t]he United States may be sued only within the exception to sovereign immunity provided by the Federal Torts Claims Act").  This the Contractors have failed to do.  The Contractors have not raised a cognizable *Bivens* claim concerning the suspension.

be fairly attributed to reasons other than invidious discrimination.[13]  Here, the Corps' decision to suspend the submission of new contracts to the SBA was reasonable in light of the *Fordice* decision in which the district court issued a declaratory judgment finding that the Corps had illegally administered the 8(a) program—specifically in regard to its submission practice.  773 F.Supp. at 882. If the *Fordice* decision was a mere pretext for discrimination on the Corps' part, then it seems remarkable that the Corps would have sought legal advice, and then after a mere three months, the Corps upon receipt of that advice would have immediately lifted the suspension concerning that part of the 8(a) program which was directly involved in the *Fordice* litigation.  The Contractors have failed to carry their burden to produce summary judgment evidence which would sustain a finding that the Defendants' proffered reasons were a mere pretext for discrimination.  *See Guthrie v. Tifco Industries,* 941 F.2d 374, 378 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992) (holding that in deciding a summary judgment motion "[a]bsent countervailing evidence, the trier of fact must accept the defendant's explanation as the real reason" for the action);  *Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992) (granting summary judgment when "the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination").  Given the Corps' unfettered discretion and its real apprehensions regarding the legality of its administration of the 8(a) program, we find that the Contractors have failed to carry their burden of proof to refute the reasons offered by the Defendants.  *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987) (holding that a defendant can present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted).  Therefore, the

---

[13]We do not hold that a minority plaintiff cannot prevail on a claim for discrimination where an agency has unfettered discretion but chooses to use such discretion to discriminate against minorities.  Rather, we are merely pointing out that complete discretion makes it more difficult for a minority plaintiff to make out a prima facie case, since the violation of a mandated policy in and of itself can serve as the basis for the finding of discriminatory intent.  *See Young v. Pierce,* 822 F.2d 1368, 1371 (5th Cir.1987) (finding of discriminatory intent by the Department of Housing and Urban Development based on its failure to perform its affirmative duty under Title VIII to learn of and to abate segregation in public housing).

district court did not err in granting summary judgment against the Contractors' discrimination claims.[14]

Finally, the Contractors contend that the district court erred in rejecting their *Bivens* claims for declaratory, injunctive, and monetary relief. Their *Bivens* claims alleged constitutional torts against Page and Green for denying the Contractors the ability to self-market their services to the Corps.[15] Under *Bivens,* "the victim of a constitutional violation by a federal agent has a right to recover damages against the agent in federal court." *Bush v. Lucas,* 647 F.2d 573, 575 (5th Cir. Unit B June 1981), *aff'd,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Therefore, a *Bivens* action requires the plaintiff to "claim a deprivation of a constitutional right." *Zernial v. United States,* 714 F.2d 431, 435 (5th Cir.1983). This action extends to alleged violations of the First Amendment and to deprivations of Fifth Amendment due process rights. *Bush,* 462 U.S. 367, 103 S.Ct. 2404 (First Amendment); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (Fifth Amendment). The Contractors' *Bivens* claims are based on two theories: that they have a right to self-marketing and they have been deprived of that right without procedural due process in contravention of the Fifth Amendment; and that this denial of self-marketing is in retaliation against the Contractors, and is an attempt to deny them access to the courts as is their right under the First Amendment.

To succeed on a procedural due process claim, the Contractors must show they had a "cognizable property or liberty interest," and such a property interest must be "a legitimate claim of entitlement." *Broadway v. Block,* 694 F.2d 979, 985 (5th Cir.1982). Here, there exists no legitimate claim of entitlement. The Contractors have no right to access of Corps personnel for this purpose.

---

[14]The Contractors also complain that the district court erred in granting summary judgment against EJA's claim concerning the Southwest Pass project. However, as explained above, the Corps had complete discretion concerning whether it would submit the project to the 8(a) program. The Contractors argue that EJA had already worked on the project the prior year and had an "expectation" that it would receive the project again. They allege it did not receive the project because the Corps feared that too many of its small business set-asides were going into the 8(a) program. Assuming this explanation is true, it still does not suffice to sustain a finding that the Corps' decision not to submit the project was based on a discriminatory intent.

[15]The Contractors also brought this claim against the Corps, but as already explained above, such a claim is cognizable only against individuals. *Williamson, supra.*

48 C.F.R. 19.803(c). As described above, under the 8(a) program, the SBA, and not the individual minority contractor, is authorized to contract as the prime contractor with the procurement agency. *Id.* The SBA may, in its discretion, allow the individual minority contractor to negotiate directly with the procurement agency, and familiarize that agency with its capabilities for future contracts; but the SBA is not required to do so. 48 C.F.R. §§ 19.803(c), 19.804-2(a)(12). These direct communications through "self-marketing" are not *required* by any statute or regulation. As found by the district court, the Contractors are allowed to self-market at the sufferance of Corps personnel, and the Corps has complete discretion concerning whether it will give such access to the Contractors. Under these facts no liberty or property interest is implicated. The district court did not err in finding that the Contractors had failed to present a violation of procedural due process.

The Contractors also contend that the denial of self-marketing is in retaliation for the lawsuit and is designed to chill access to the courts of the United States in violation of the Contractors' First Amendment rights.[16] Because of the preeminent place that the First Amendment occupies in our constitutional jurisprudence, the Contractors need not prove that in being denied the right to self-market, they have been denied a property right or liberty interest or some other independent legal right. *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). But they still must show a constitutional violation. Here, the fact that the contracting officers' refused to speak to the Contractors during the pendency of this suit does not indicate that such refusal was made in an effort to chill the Contractors' access to the courts or to punish them for having brought suit. Rather, such a refusal was made pursuant to an Information Paper that instructed agency procurement officers to avoid contact with contractors during the pendency of their litigation with the agency.[17]

---

[16]In their opaque brief, the Contractors make some murky allusions to the possibility that their First Amendment rights have also been violated by the mere fact that Page and Green will not speak to them. They cite no authority for this theory, and we will not root about in the case law seeking support for it. *Cf. United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Furthermore, their amended complaint does not offer this theory as a basis for recovery, and they did not argue this theory below. Therefore, the Contractors have waived any claim on this basis.

[17]The Contractors now contend that this paper is hearsay, and cannot be relied on by the district court in rendering summary judgment. However, they did not raise this hearsay objection below, so the error, if any, is waived. *See United States v. Maddox,* 492 F.2d 104, 107 (5th Cir.),

This paper was issued on February 6, 1990—months before the suspension—and was apparently distributed by the Army's general counsel to all defense procurement agencies. It notes that contact should be avoided so that the procurement officer will not inadvertently "give the contractor any ammunition to weaken the Government's position. Any such statements may be used by the contractor in litigation and may ultimately lead to the depositions of the officials who make the statements and their subsequent testimony." A government employee who is a potential witness is not improperly chilling access to the courts or retaliating for use of the judicial system when he refuses to speak to a party concerning a matter that is related to the gravamen of that party's litigation against him or his employer. Page and Green did not deny the Contractors their constitutional rights under the First Amendment. There is nothing which would sustain a finding that Page and Green's actions—perhaps more accurately, their inactions—were retaliatory or motivated by considerations other than those of the Information Paper or that they were a pretext for unconstitutional retaliation. Consequently, "any assertion that [the officers'] actions ... were retaliatory can only be speculation." *Bowles v. U.S. Army Corps of Engineers,* 841 F.2d 112, 117 (5th Cir.), *cert. denied,* 488 U.S. 803, 109 S.Ct. 33, 102 L.Ed.2d 13 (1988). The district court did not err in finding that since access for self-marketing was discretionary and that the denial of self-marketing was based on official army policy, it was not unconstitutional or "retaliatory" for Corps personnel to avoid the plaintiffs during the litigation.[18]

---

*cert. denied,* 419 U.S. 851, 95 S.Ct. 92, 42 L.Ed.2d 82 (1974) (holding that "[a] rule of evidence not invoked is waived").

[18]Furthermore, as to both *Bivens* claims, the Contractors sought monetary damages against Page and Green. However, as pointed out by the district court, the Contractors introduced no evidence showing that Page's and Green's refusal to speak with the Contractors led to the Contractors being denied any contracts. In an earlier suit against the Corps concerning the discretionary award of contracts, this Court noted that the plaintiffs wisely abstained from pressing any claims for monetary damages because, "Such a claim would force upon them the Herculean task of proving the Corps actually would have awarded them the contracts in question in the absence of the claimed violations." *Valley I,* 714 F.2d at 29 n. 4. In the case *sub judice,* not only have the Contractors failed to show that the Corps would have awarded them contracts if the Contractors were allowed to self-market, but they have also failed to describe any particular contracts as to which they were in contention. Therefore, for this reason also, the district court did not err in finding that the Contractors were not entitled to monetary damages based on their *Bivens* claims.

V. Attorneys' Fees

The Contractors argue that they are entitled to attorneys' fees under 28 U.S.C. § 2412(d) and 42 U.S.C. § 1988 because by filing the lawsuit and vigorously prosecuting it, they forced the Corps to resume the 8(a) program. Allegedly, these actions qualify them to be considered as prevailing parties because they "acted as a catalyst in prompting the opposing party to make amends." *Ramon by Ramon v. Soto,* 916 F.2d 1377, 1384 (9th Cir.1989). We reject these contentions.

Section 1988 can serve as the basis for the recovery of attorneys' fees only if the Contractors can show that they have presented a substantial racial discrimination claim. *See Kelly v. City of Leesville,* 897 F.2d 172, 177 (5th Cir.1990); *McDonald v. Doe,* 748 F.2d 1055, 1077 (5th Cir.1984) (noting that section 1988 "was adopted because the actions in which fees are allowed vindicate rights based on the federal constitution or federal statutes. If it is determined that no constitutional right was violated, the predicate for the award of fees vanishes."). However, as we have discussed above, the Contractors have wholly failed to make out a claim for racial discrimination. At best, the Contractors have alleged that the Corps suspended the 8(a) program for an inadequate reason: their fear that the *Fordice* decision will lead to further lawsuits or potential liability concerning their participation in the 8(a) program. But, the Corps' suspension of the program based on its reaction to the *Fordice* decision does not somehow transmute that motivation into racial discrimination. Even assuming that the Contractors' actions caused the resumption of the 8(a) program, since the suspension was not based on any racial animus, the Contractors could not recover under section 1988(b) and therefore cannot be considered prevailing parties under that statute. *See McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir.1983) (finding that an unsuccessful bidder on a government contract could be a prevailing party under section 2412 based on his claim of bad faith, but not under section 1988 because he could not prevail on his discrimination claim).

The Contractors can recover under the Equal Access to Justice Act codified at section 2412(d)(1)(A) only if they show: (1) that they are a "prevailing party"; (2) that the Government's position was not "substantially justified"; and (3) that no "special circumstances make an award

unjust." *Perales v. Casillas,* 950 F.2d 1066, 1072 (5th Cir.1992).[19]  The Contractors have not alleged any facts showing that the Defendants' position was not substantially justified.  Since the Defendants' abeyance was based on the adverse *Fordice* decision, we find that their position concerning the suspension of the 8(a) program pending further guidance was substantially justified.  Therefore, the district court did not err in denying attorneys' fees to the Contractors.

VI. Change of Venue

The Contractors contend that the district court erred in granting the Defendants' change of venue motion as to Keeler's Cotton Meade project claims.  However, the grant of a change of venue motion is an interlocutory order and is not reviewable.  *See Louisiana Ice Cream Distributors v. Carvel Corp.,* 821 F.2d 1031, 1033-34 (5th Cir.1987);  *Garner v. Wolfinbarger,* 433 F.2d 117, 120 (5th Cir.1970);  *Chas. Pfizer & Co. v. Olin Mathieson Chem. Corp.,* 225 F.2d 718 (5th Cir.1955). Keeler's Cotton Meade project claims have been severed from this action and transferred to a different forum.  These claims are unreviewable in this appeal.

### Conclusion

Based on the foregoing, the district court's orders are

AFFIRMED.

---

[19]We note that the *Ramon* court decided only the first factor and held that the plaintiffs were entitled to fees "unless the government's position was substantially justified or special circumstances would make an award unjust." *Ramon,* 916 F.2d at 1384.  Therefore, even if the Contractors can be classified as "catalysts" for the Defendants' resumption of the 8(a) program, they still must satisfy the remaining requirements of section 2412(d).