COMCAST OF ILLINOIS X, LLC,
an Illinois Limited Liability
Company, Plaintiff,

v.

PLATINUM ELECTRONICS, INC. a
Nebraska Corporation; Steven M. Ab-
boud, individually; Patrick B. Finn,
individually; and Manual J. Varra, in-
dividually, Defendants.

No. 8:03 CV 195.

United States District Court,
D. Nebraska.

Sept. 23, 2004.

Jeffrey R. Platt, Coman, Anderson Law Firm, Chicago, IL, Mark E. Novotny, Lamson, Dugan Law Firm, Omaha, NE, Maureen Ann Beck, Coman, Anderson Law Firm, Chicago, IL, Michele E. Young, Lamson, Dugan Law Firm, Omaha, NE, for Plaintiff.

J. William Gallup, Gallup, Schaefer Law Firm, Omaha, NE, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### INTRODUCTION

The plaintiff, Comcast of Illinois X, has sued the defendants for declaratory, injunctive and monetary relief, claiming it is owed $175,109.98 as compensation for the illegal manufacture, modification, and sale/distribution of cable television "pirate" decoders (hereafter "cable descramblers") by the defendants and $50,000.00 in enhanced damages. The defendants contend that the manufacture, modification, and sale/distribution of the cable descramblers constitutes legal conduct and that it is only the customer's illegal use of their products which is prohibited. The defendants further assert that they never actually defrauded or intended to defraud anyone.

Before me now are two matters. The first is the plaintiff's (hereafter, "Comcast") motion for summary judgment, Filing No. 70, which is supported by a brief, indexes of evidence, and reply brief, Filing Nos. 71, 72, and 83. Defendant Steven M. Abboud (hereafter, "Abboud") has filed a motion and brief opposing summary judgment, Filing No. 79, which is supported by an affidavit, Filing No. 80. Abboud, proceeding *pro se*, is the only defendant to respond to this summary judgment motion.[1]

The second matter before me is the plaintiff's motion, Filing No. 87, asking the court to order defendant Abboud to show

---

1. Magistrate Judge Thalken ordered the clerk to entered judgment against defendant Platinum Electronics, Inc., for failure to retain substitute counsel as ordered. *See* Filing Nos. 62 and 63. Defendants Finn and Varra answered the amended complaint, Filing Nos. 61 and 68, but failed to respond to the motion for summary judgment, Filing No. 70.

cause why he should not be held in contempt for his failure to comply with the court's order regarding an asset freeze. The plaintiff alleges that on October 9, 2003, Abboud encumbered a piece of real property subject to the asset freeze by taking out a $175,000 construction loan and conveying the property as collateral for the loan.

After careful consideration of the facts of the case and the filings and other related documents, I find that Comcast's motion for summary judgment should be granted; a judgment of $225,109.98 should be entered against the defendants; full costs, including reasonable attorney's fees, should be awarded; and the defendants should be permanently enjoined from the manufacture, modification, and/or sale or distribution of cable descramblers pursuant to 47 U.S.C. § 553(c)(2)(A).

Further, the court orders defendant Abboud to appear on the date set below to show cause why he should not be held in contempt for an alleged violation of the court's prior order freezing the defendants' assets.

## STANDARD OF REVIEW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, if the moving party does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159–60, 90 S.Ct. 1598; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir.1987).

Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the nonmoving party may not rest upon the allegations in the pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed.R.Civ.P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir.1998). The party opposing the motion cannot merely show some metaphysical doubt as to the material facts, but must show "there is sufficient evidence to support a jury verdict" in the party's favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Facts are viewed in the light most favorable to the nonmoving party, but in order "to defeat a motion for summary judgment, the nonmoving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University*, 167 F.3d 398, 401 (8th Cir.1999) (*citing Ghane v. West*, 148 F.3d 979, 981 (8th Cir.1998)). "A court does not weigh evidence or make credibility determinations." *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir.2003).

## FACTS

Comcast owns and operates cable television systems in forty-one states across the nation. Filing No. 71, Def.'s Brief at 2, ¶ 4 (hereafter, "Filing No. 71"). Comcast offers cable television programming to customers (hereafter, "subscribers") who request and pay for such services. Comcast's programming is offered to subscribers in "packages" of programming service, such as Basic and Standard, which subscribers receive for a monthly subscription fee. Id. at ¶¶ 6, 7. Subscribers may select additional premium programming services, such as Home Box Office, Showtime, and Cinemax, for additional monthly fees.[2] Id. at ¶ 8. Also, Comcast offers Pay Per View programming, a service which allows subscribers to purchase individual sporting events, movies, or other entertainment for per-event charges in addition to the monthly subscription fee.[3] Id. at 2, ¶ 9. Each subscriber is entitled to receive only the level of programming that they purchase. Id.

Comcast encodes or "scrambles" its programming signals and provides its subscribers with addressable devices known as "converter boxes." Id. at 3, ¶ 13. These converter boxes connect to the subscriber's television set and decode the scrambled signals so that the programming selected and purchased by the subscriber can be viewed clearly. Id. at ¶ 16. Programming services which are not purchased remain scrambled and cannot be viewed on the subscriber's television set.

Id. However, an individual can install an unauthorized "pirate" cable descrambler onto Comcast's cable system which allows the subscriber to receive all cable programming services, including premium and Pay Per View programming, without purchasing them. Id. at ¶ 20.

Comcast's system is "addressable," meaning that the converter box which Comcast provides to a subscriber is programmed by a central computer to enable viewing of only those programming services purchased by that subscriber. Id. at ¶ 17. Comcast's computer programs each subscriber's converter box so that it receives only purchased services. Id.

The defendants operated Platinum Electronics, Inc.,[4] which exists primarily to sell and distribute cable descramblers. Defendant Abboud is the registered agent for Platinum Electronics. Filing No. 79, Abboud's Filing No. 79 at 7, ¶ 31 (hereafter, "Filing No. 79"). The defendants advertised and marketed their products via the Internet at http://www.platinumelectronics.com. Filing No. 71 at 5, ¶ 29. In February 2003, Comcast discovered that the defendants were selling cable descramblers compatible with its Illinois system. On February 11, 2003, John Schramm, a Special Project Auditor/Investigator employed by Comcast, logged onto the defendants' Web site and ordered a Global Universal Cable Box for $217.00. Id. at 6, ¶¶ 28, 32–34. The defendants' Web site advertised that all its decoders were "100% bullet proof."[5] Id. at 5, ¶ 29.

---

**2.** The costs of premium services ranges from $7.00 to $13.00 per month. Filing No. 71 at 4, ¶ 23.

**3.** These charges typically range from $4.00 to $49.99 per event. Filing No. 71 at 4, ¶ 21.

**4.** Platinum Electronics was incorporated in Nebraska in October 2002. The registered business address for Platinum Electronics was 11111 M Street, Omaha, NE 68137. Filing No. 79, Opp. to SJ Mtn. at 7, ¶ 31.

**5.** "Bullet proof" is a term of art used in this cable industry to refer to descramblers which can withstand or evade counter-security measures taken by the cable industry to disable such devices. Filing No. 71, Ex. A, Schramm Aff. at ¶ 2. Defendant Abboud disputes this definition, and contends that "bullet proof" merely refers to a built-in surge protector. Filing No. 79, Filing No. 79 at 7, ¶ 30.

On February 14, 2003, a box containing a VM 4000+ descrambler was delivered via UPS to Schramm, with Platinum Electronics' return address. *Id.* at 6, ¶ 35. The box also contained an invoice from Platinum Electronics, an instruction manual, a "CATV Owners Manual," and a disclaimer which in part read: "AS A USER: I will not use any cable product purchased from Platinum Electronics by myself or my company, for the purpose of decoding or viewing unauthorized premium cable channels or avoiding rightful payment to any cable company." *Id.* at 7, ¶ 39. Schramm tested the descrambler on Comcast's Illinois cable system that day and found it could descramble all of Comcast's scrambled programming services, including premium and Pay Per View services. *Id.* at 7, ¶ 40.

A review of Platinum Electronics' bank records reveals that from October 2002 through April 2003, the total revenue from the sale of cable descramblers was $175,109.98.[6] *Id.* at 8, ¶ 43.

## DISCUSSION

### A. 47 U.S.C. § 553

The Cable Communications Act (hereafter, "the act") prohibits anyone from intercepting or assisting others in intercepting communications services offered over a cable system. 47 U.S.C. § 553(a)(1). Put simply, the act is designed to "protect the revenue of television cable companies from unauthorized reception of their transmissions." *United States v. Coyle,* 943 F.2d 424, 427 (4th Cir.1991). The prohibition against "assisting" in intercepting unauthorized transmissions includes the illegal

manufacture and sale of "pirate" descrambling devices.[7] 47 U.S.C. § 553(a)(2).

The act applies to the sale of cable descramblers. Section 553 is "primarily aimed at preventing the ... distribution of so-called black boxes and other unauthorized converters which permit reception of cable service without paying for the service." *Storer Communications, Inc., v. Mogel,* 625 F.Supp. 1194, 1198 (S.D.Fla. 1985) (*quoting* H.R.Rep. No. 98–934, 98th Cong., 2d Sess. 84 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4721).

Several courts have interpreted section 553 to prohibit sales of cable descramblers identical to those sold by the defendants if the seller knew or intended that the device would be used for unauthorized reception of cable television programming service. *See, e.g., Time Warner Cable v. Freedom Electronics, Inc.,* 897 F.Supp. 1454, 1459 (S.D.Fla.1995); *Storer Communications, Inc. v. Mogel,* 625 F.Supp. 1194, 1198 (S.D.Fla.1985); *Continental Cablevision, Inc. v. Poll,* 124 F.3d 1044, 1047 (9th Cir. 1997); *United States v. Norris,* 88 F.3d 462, 466 (7th Cir.1996); *International Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1003–05 (2d Cir.1993); *United States v. Coyle,* 943 F.2d 424, 427 (4th Cir.1991); *United States v. Gardner,* 860 F.2d 1391, 1398–99 (7th Cir.1988); *Intermedia Partners Southeast v. QB Distributors, LLC,* 999 F.Supp. 1274, 1281 (D.Minn.1998); *Time Warner Cable v. Cable Box Wholesalers, Inc.,* 920 F.Supp. 1048 (D.Ariz. 1996).

■ The business of the defendants in this case is indistinguishable from that of most cable descrambler sellers found liable for violations of the act. The issue thus

---

**6.** The amount $175,109.98 represents "all customer deposits and other deposits." Filing No. 71 at 8, ¶ 43.

**7.** The term "assist in intercepting or receiving" includes the manufacture or distribution

of equipment that the manufacturer or distributor intends to be used for the unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1). 47 U.S.C. § 553(a)(2).

becomes whether the defendants' purpose in selling descramblers was to permit customers to steal cable television programming service from cable television service providers.

## B. Defendants' Intent

First, the defendants do not dispute that they were engaged in the business of selling cable descramblers capable of decoding cable television service. Filing No. 80, Abboud Aff. at 4, ¶ (E); Filing No. 71 at 5, ¶¶ 28–43. Second, the defendants do not dispute that they sold descramblers into the geographical area covered by Comcast's Illinois system which were compatible with Comcast's scrambling technology, thereby allowing purchasers to view all of Comcast's scrambled programming service, in particular the premium and Pay Per View programming services, without purchasing it. *Id.* Last, a review of the record indicates that the defendants did not engage in any business other than selling cable descramblers. The inquiry, then, is whether the defendants "intended" to assist in intercepting communications service offered over a cable system.

The best evidence of a defendants' true intent is the nature of the "pirate" devices sold. Selling non-addressable "bullet proof" descramblers with installation instructions and representations that it can get all of the premium and Pay Per View channels of a cable television service provider can have only one purpose: "to enable the purchaser to receive and unscramble programming services offered by a cable company without notifying the cable company and without paying for the services." *TKR Cable v. Cable City Corp.,* 1996 WL 465508 at *7 (D.N.J.1996), *aff'd,* 267 F.3d 196 (3rd Cir.2001). *See also Subscription Television v. Kaufmann,* 606 F.Supp. 1540, 1542, 43 ¶ 17 (D.D.C.1985) (finding the only reason to remove the

address ability function from a decoder device is to "enable a user to receive and unscramble an STV signal without notifying the signal provider"); *see also Continental Cablevision, Inc. v. Poll,* 124 F.3d at 1047 (finding sale of non-addressable descrambling devices to be evidence of seller's intent to assist in the interception of cable services).

The defendants' instructions on how to install the descrambler are additional evidence of their intent that the descrambler would be used for theft of cable services. *See, e.g., Storer Communications, Inc. v. Mogel,* 625 F.Supp. at 1200 (finding defendant's provision of installation instructions is conduct which assists in receiving or intercepting cable transmissions); *TKR Cable v. Cable City Corp.,* 1996 WL 465508 at *7 (finding defendant's provision of "hookup instructions" for device to be evidence of intent); *Columbia Cable TV Co. v. McCary,* 954 F.Supp. 124, 128 (D.S.C. 1996) (finding defendants' instructions evidence that devices were sold with the intent of assisting others in receiving cable television services without authorization).

The defendants' Web site advertised that its descramblers were "100% bullet proof." Filing No. 71 at 5, ¶ 29. A bullet proof cable descrambler box is immune from electronic counter-security measures, that is, an electronic signal sent by a cable services provider to destroy an unauthorized descrambler detected on a cable system. A descrambler box allows an individual to steal cable programming without the knowledge or consent of the cable company. Filing No. 72, Pl.'s Index of Evid., Ex. B, Schramm Aff. at 2, ¶ 2. Decisions discussing the effects of using cable descramblers with "bullet proof" capability find that this feature shows intent to assist in the theft of cable television services. *See Poll,* 124 F.3d at 1047; *TKR Cable,* 1996 WL 465508 at *7.[8]

---

**8.** *See also Time Warner Cable v. Cable Box*    *Wholesalers,* 920 F.Supp. 1048, 1050 (D.Ariz.

## C. Defendants' Arguments

Defendant Abboud raises several arguments in support of the contention that genuine issues of material fact exist.[9] Each argument is considered in turn.

Abboud maintains that the defendants' conduct is legal under *Imperial Empire Trading Co. v. City of Omaha*, 246 Neb. 919, 524 N.W.2d 314 (1994), since there the Nebraska Supreme Court held that "possession of such equipment is lawful, and . . . only the ultimate use of this equipment may be unlawful, not its sale." *Id.* at 316.[10] However, *Imperial* is a state criminal case in which the issue was whether the City of Omaha wrongfully destroyed seized electronic devices after it concluded they were contraband.[11] The district court had held that the City was liable for conversion and wrongful destruction of property, but concluded that no lawful market had existed for the destroyed devices. The supreme court reversed, finding that the district court had made several incorrect factual determinations. The supreme court did not mention 47 U.S.C. § 553—or any other section of the act and, further, made a number of factual findings not applicable to this case. For example,

court found that consumers could use their own equipment and get a $1 per month credit, and that a market for the equipment at issue in the case existed outside the cable industry. *Imperial*, 524 N.W.2d at 315–6. Neither situation exists here.

Abboud also asserts that cable descramblers may be purchased for at least two other reasons other than to steal cable programming service: 1) to allow consumers to purchase their cable equipment rather than being "beholden to rent from the de-regulated cable industry," Filing No. 80, Abboud Aff. at 5, ¶ 13, and 2) to "eliminate exorbitant, never-ending, monthly box rental fees that are paid to the cable company akin to the former telephone rental charges found to be in violation of anti-trust laws." Filing No. 79 at 7, ¶ 30. These reasons are without merit since the defendants do not dispute that the cable descrambler sold to Schramm was capable of receiving and descrambling Comcast's programming. Further, the cable descrambler Schramm purchased from the defendants cost $217.00. Filing No. 71 at 6, ¶ 35. Assuming the cable service provider issued consumers a monthly credit for using their own equipment,[12] it would

1996); *Time Warner Cable v. Freedom Electronics*, 897 F.Supp. 1454, 1457 (S.D.Fla. 1995); *United States v. Coyle*, 943 F.2d 424, 425 (4th Cir.1991) (similar device known as a "Cable TV Data Blocker" found to hinder cable companies from discovering the unauthorized use of a descrambler).

**9.** Abboud also raised several contentions, such as ignorance and the cable industry's violations of United States anti-trust laws, that I will not consider because they are irrelevant to the issues in this case. *See* Filing No. 79 at 4–5, ¶¶ D, G, H.

**10.** From the number of cable descrambler sellers citing *Imperial* in their defenses, this case seems to be part of a standard defense litany. Ironically, the owner of Imperial Empire Trading Co. was Ronald Abboud, who is also currently defending himself in this court

against allegations that he distributed illegal descrambling equipment. *See Comcast v. Ronald J. Abboud and Multi-vision Electronics, Inc.*, Case No. 8:03CV311.

**11.** The Nebraska Supreme Court in *Imperial* did not identify the electronic devices or describe them in any way.

**12.** The estimated monthly charges are taken from the following sources: *Imperial Empire Trading Co. v. City of Omaha*, 246 Neb. 919, 524 N.W.2d 314 (1994) (monthly credit for use of own equipment, $1); *Time Warner Cable v. Cable Box Wholesalers*, 920 F.Supp. 1048, 1051 (D.Ariz.1996) (rental fee of $2.90 per month); *Time Warner Entertainment/Advance–Newhouse P'ship v. Worldwide Electronics*, 50 F.Supp.2d 1288, 1297 (S.D.Fla.1999) (FCC-regulated monthly rental charge of $3.17 assessed on actual cost basis).

take anywhere from six to eighteen years [13] for one of the defendants' customers to recover the initial investment, thereby escaping from "being beholden to rent cable boxes and remote controls from the deregulated cable industry." [14]

Abboud also claims that the disclaimers on the defendants' Web site and included with their devices shield them from liability and shift culpability to their customers. [15] *See* Filing No. 79 at 13; Filing No. 80, Abboud Aff. at 4–5, ¶ 10. The defendants' disclaimers purport to extract from the purchaser a representation that they will not use the device illegally or without authorization under 47 U.S.C. § 553 from the cable company. [16]

However, every reported decision in which this "disclaimer defense" was raised holds that disclaimers do not shield sellers of cable descramblers from liability. *See, e.g., Subscription Television v. Kaufmann,* 606 F.Supp. 1540, 1542–3 (D.D.C.1985) (finding "worthless" the defendant's "instruction" that the purchaser of a non-

addressable decoder should communicate with the signal provider). [17] In addition, descrambler sellers' use of disclaimers reflects their awareness of the illegality of their business. *Columbia Cable TV Co. v. McCary,* 954 F.Supp. at 127 ("This court does not find that the disclaimer negates any intent to assist others in unauthorized access of cable programming. In fact, the court finds that the disclaimer demonstrates knowledge of the most probable if not only use of the devices."). [18]

■ Finally, Abboud argues that the summary judgment motion should not be granted because the defendants need more time to discover additional facts to oppose the motion. Such a request must be raised under Rule 56(f). Rule 56(f) provides,

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may or-

---

**13.** This admittedly simple formula also does not take into account important factors such as the present value of money; the useful life of a descrambler box or its rate of obsolescence; or rapid technological advances which render cable current descramblers prematurely worthless because they are incompatible with advanced broadcast technology.

**14.** Equally unpersuasive are the defendants' arguments that customers purchase their products to obtain functions such as remote control, picture-in-picture, or parental lockout. *See, e.g., Poll,* 124 F.3d at 1048 (holding that a few legal uses will not insulate sellers of descramblers from civil liability where defendants knew and intended that buyers would use the descramblers for theft of cable programming).

**15.** And, in the process, completely redefine the age-old business mantra, "complete customer service."

**16.** The defendants also claim they "thoroughly trained" their employees not to sell products to potential customers whom they

thought might use them to steal cable programming service.

**17.** *See also, Intermedia Partners Southeastv. QB Distribs. L.L.C.,* 999 F.Supp. at 1282; *TKR Cable Co. v. City Cable Corp.,* 1996 WL 465508; *United States v. Gardner,* 860 F.2d at 1395; *ON/TV v. Julien,* 763 F.2d 839, 844 (7th Cir.1985); *Time Warner v. Cable Box Wholesalers, Inc.,* 920 F.Supp. at 1053 (D.Ariz. 1996); *Time Warner Cable v. Freedom Electronics,* 897 F.Supp. at 1459; and *Oceanic Cablevision, Inc. v. M.D. Electronics,* 771 F.Supp. 1019, 1025 (D.Neb.1991) (where the primary noncorporate defendant was Joseph Abboud).

**18.** See also *United States v. Gardner,* 860 F.2d at 1397 (" 'Whatever the attempted legal effect of the defendant's disclaimer, the ultimate trier of fact could easily find that it was a transparent attempt to deny the patent illegality of the defendant's acts.' ") (*citing ON/TV v. Julien,* 763 F.2d at 844).

der a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). To make a Rule 56(f) request, the moving party therefore must file an affidavit explaining "what specific facts further discovery might unveil." *Dulany v. Carnahan,* 132 F.3d 1234, 1238 (8th Cir.1997). The party's affidavit must also demonstrate how postponing a ruling on the motion will allow the party, "by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 70 F.Supp.2d 944, 981 (N.D.Iowa 1999) (*quoting Simmons Oil Corp. v. Tesoro Petroleum Corp.,* 86 F.3d 1138, 1144 (Fed.Cir.1996)). "The rule does not require clairvoyance on the part of the moving party," *Equal Employment Opportunity Commission v. American Home Prods. Corp.,* 144 F.Supp.2d 1084, 1088 (N.D.Iowa 2001) (*citing Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1292 (5th Cir.1994)), but the party must detail the materials further discovery will reveal and how those materials will help the party oppose summary judgment. *Id.* "It is not enough simply to assert ... that 'something will turn up.'" *Id.* (*quoting Simmons Oil Corp. v. Tesoro Petroleum Corp.,* 86 F.3d at 1144).

■ Abboud filed an affidavit, Filing No. 80, on May 28, 2004, but did not request or mention the need for additional discovery time. Further, Abboud's opposition, Filing No. 79, fails to satisfy the requirements for a valid Rule 56(f) request. As such, there is absolutely no basis for granting Abboud's request for additional discovery time or to delay ruling on the summary judgment motion. *See Stanback v. Best Diversified Prods., Inc.,* 180 F.3d 903, 911 (8th Cir.1999) (where party fails to carry burden under Rule

56(f), postponement of ruling on summary judgment is unjustified).

### D. Damages

■ *Profits.* Once liability has been determined, the court may award the aggrieved party "any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 553(3)(A)(I). All of the defendants' profits may be awarded to the plaintiff, whether or not the profits derived from the sale of cable descramblers into the geographical areas served by the plaintiff's cable system areas. *See Time Warner Entertainment/Advance–Newhouse P'ship v. Worldwide Electronics,* 50 F.Supp.2d at 1300; *CSC Holdings, Inc. v. KDE Electronics Corp.,* 2000 WL 284005 (N.D.Ill. 2000). Further, the act provides for individual liability. *Kingvision Pay Per View v. Muths, Inc.,* 2001 WL 218909 (N.D.Ill. 2001). The act defines the term "person" as an "individual, partnership, association, joint stock company, trust, corporation, or government entity." 47 U.S.C. § 522(15). Moreover, where the defendants act in concert to sell decoders, they can be held jointly and severally liable for the resulting damages. *CSC Holdings, Inc. v. JRC Prods.,* 158 F.Supp.2d 798, 814 (N.D.Ill. 2001). Further, defendants also may be held jointly and severally liable because damages may be impossible to apportion among the defendants in proportion to their respective levels of involvement. *Bosco v. Serhant,* 836 F.2d 271, 280 (7th Cir.1987).

The evidence in this case, largely undisputed, establishes that the defendants were involved in the sale/distribution of illegal cable descramblers. Having determined that violations of 47 U.S.C. § 553 occurred, I find the defendants jointly and severally liable and award damages of $175,109.98.[19]

19. As noted above in footnote 4, this amount

represents the amount shown by the defen-

*Enhanced Damages.* In addition to its request for all the defendants' profits, Comcast requests enhanced damages. The act permits "the court in its discretion [to] increase the award of damages [by] an amount of not more than $50,000," 47 U.S.C. § 553(c)(3)(B), when the court finds that a defendant that has violated section 553 acted "willfully and for purposes of commercial advantage or private financial gain." *Freedom Electronics*, 897 F.Supp. at 1460; *Poll*, 124 F.3d at 1049. The standard for willfulness in a civil case requires proof of "a disregard for the governing statute and an indifference to its requirements." *Trans World Airlines v. Thurston*, 469 U.S. 111, 127, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).[20]

■ In this case, the defendants operated their business selling descramblers willfully and with full knowledge of the damages such descramblers caused to cable operators. In assessing the full measure of enhanced damages against these defendants, I give effect to Congress's intent that distributors of illegal descrambling equipment should bear substantial liability. The uncontested facts show that the defendants deliberately sold, marketed, and distributed illegal cable descramblers, making substantial profits in doing so. The maximum assessment of $50,000 enhanced damages is therefore appropriate.

*Costs.* A court may award a prevailing party recovery of full costs, including investigative costs and reasonable attorney's fees. 47 U.S.C. § 553(c)(2)(C); *Poll*, 124 F.3d at 1046 (approving the district court's

award of plaintiff's attorney's fees); *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir.1993) (noting district court's award of plaintiff's full costs); *American Cablevision v. McGinn*, 817 F.Supp. 317, 320 (E.D.N.Y.1993) (awarding full costs, including recovery of investigative costs); *In re Cohen*, 121 B.R. 267, 269 (Bankr. E.D.N.Y.1990) (awarding investigative fees pursuant to section 553 as part of overall damage assessment against cable descrambler seller). To put a stop to defendants' illegal conduct, I therefore award the plaintiff recovery of its full costs, upon a proper showing, including any investigative costs and reasonable attorney's fees.

■ *Permanent Injunction.* A court may grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations." 47 U.S.C. § 553(c)(2)(A). In this case, issuance of a permanent injunction is justified. The defendants' entire business was built upon defrauding the cable industry by providing the means necessary to steal cable television programming. Further, a risk exists that defendants will continue such conduct in the future. Abboud's assertions that their activities are permitted by law, taken along with his outright denials of any wrongdoing—even in the face of overwhelming legal precedent and factual proof—suggest that the defendants might well commence operations again under some other corporate shell. Unless the defendants are made to feel the consequences of their wrongdoing, other cable

---

dants' U.S. Bank records as the gross profits during the applicable period. Filing No. 71 at 7, ¶ 41.

**20.** In similar circumstances, one court was moved to observe:

As for the punitive damages here, anything less than $50,000 would be uncalled for. The defendant, speaking through its president and CEO, Mr. David J. Abboud, made

huge sums of money, well knowing that it was—and he was—repeatedly and brazenly flouting the law in so doing. Mr. Abboud's testimony at trial, in which he sanctimoniously sought to profess ignorance of that reality, was an exercise in rank perjury. At $50,000, he gets off cheap.

*General Instrument Corp. v. Nu–Tek Electronics & Mfg., Inc.*, 1997 WL 325804, *3 (E.D.Pa. 1997).

operators will be forced to commence separate actions against the defendants to protect their interests. Such suits would be a waste of judicial resources when section 553 provides this court with such broad injunctive power.

## CONCLUSION

IT IS, THEREFORE, ORDERED:

1. The plaintiff's motion for summary judgment, Filing No. 71, is granted;

2. The plaintiff's claim for damages totaling $175,109.98 is granted;

3. The plaintiff's claim for enhanced damages totaling $50,000.00 is granted;

4. The plaintiff's claim for recovery of full costs, including investigative costs and reasonable attorney's fees, is granted upon a proper showing;

5. The defendants are permanently enjoined from the manufacture, modification, and/or sale/distribution of cable descramblers pursuant to 47 U.S.C. § 553(c)(2)(A); and

6. Defendant Steven M. Abboud is ordered to appear before this court on **October 28, 2004, at 1:30 p.m., Courtroom 3 (Omaha),** to show cause why he should not be held in contempt for his alleged violation of the court's prior order regarding an asset freeze.